OPINION
{¶ 1} Appellant, Bobbie Jo Ridenour ("Bobbie Jo"), appeals the August 22, 2003 judgment entry of the Lake County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of her minor children, Jessica, Billy, and Jordan Ridenour, to the Lake County Department of Job and Family Services ("Lake Family Services").[1] For the following reasons, we reverse the decision of the juvenile court.
 {¶ 2} On September 3, 1998, and on November 24, 1998, Lake Family Services filed dependency complaints in regards to Jessica, then age seven, and to Billy, then age three. These complaints alleged Billy had been wearing casts on his feet as a result of surgery; that Bobbie Jo had failed to obtain the appropriate follow-up medical care that Billy required; that Bobbie Jo was overwhelmed with her current situation which included caring for another sibling, Scott Schiavoni, Jr., with cerebral palsy; that Bobbie Jo had removed the casts herself with a knife; and that Billy had broken his ankle shortly after the casts were removed while riding a bike with another child. Jessica and Billy were adjudged dependent and Lake Family Services was granted protective supervision of both children. The court adopted a case plan which included Bobbie Jo having a drug and alcohol assessment and attending counseling; Billy and Jessica having a safe and secure environment; and Bobbie Jo and Jessica participating in counseling.
 {¶ 3} On June 24, 1999, Lake Family Services was granted emergency temporary custody of Jessica and Billy due to Bobbie Jo's loss of housing. R.C. 2151.31(A)(3)(b) ("[a] child may be taken into custody * * * when * * * [t]here are reasonable grounds to believe that the child is in immediate danger from the child's surroundings"). Subsequent to the removal of the children, the case plan continued to evolve.[2] The consistent goals of the case plan were that Jessica was to participate in therapeutic counseling to address her sexual behavior issues and that Bobbie Jo was to participate in counseling to address her own mental health issues and to undergo a drug and alcohol assessment.[3] Temporary custody of the children continued with Lake Family Services throughout 1999 and 2000 as the goals of the case plan were not being met.
 {¶ 4} By June 23, 2000, Bobbie Jo had obtained housing and moved the juvenile court for the return of Jessica and Billy. Bobbie Jo and Lake Family Services reached an agreement that Billy would return to Bobbie Jo upon his enrollment in a Head Start program. Jessica would return to Bobbie Jo once in-home or home-based services and case management were in place and Jessica was scheduled to attend individual counseling. Lake Family Services would retain protective supervision of Jessica and Billy after they were returned to Bobbie Jo's custody. Bobbie Jo was again ordered to undergo a drug and alcohol assessment. Billy was reunified with Bobbie Jo on September 29, 2000.
 {¶ 5} On October 5, 2000, Bobbie Jo gave birth to Jordan Ridenour.
 {¶ 6} On January 24, 2001, Lake Family Services moved to extend its temporary custody of Jessica on the grounds that Bobbie Jo's use of support services had been inconsistent and minimal and therefore, Jessica's return to Bobbie Jo would jeopardize the progress Jessica had been making in therapy. The court granted Lake Family Services' motion.
 {¶ 7} On February 22, 2001, a semiannual review was filed with the court reporting that Bobbie Jo was meeting Billy's basic needs at home and that Bobbie Jo had attended some therapeutic counseling, but that she not yet completed another drug and alcohol assessment.
 {¶ 8} In August 2001, Jordan was reported to be having seizures and was determined to be suffering from a two-month developmental delay.
 {¶ 9} On August 9, 2001, Bobbie Jo and Lake Family Services reached an agreement regarding Jessica's return to Bobbie Jo's home. Bobbie Jo was to complete a drug and alcohol assessment and to ensure that a proper bed and bedroom with an alarm installed on the door were made available for Jessica. Jessica began overnight visitation with Bobbie Jo on August 17, 2001. On September 14, 2001, Jessica was returned to Bobbie Jo's custody as Bobbie Jo had complied with the provisions of the August 9, 2001 agreement, except for the drug and alcohol assessment. Review hearings were held in November and December 2001, at which Lake Family Services raised concerns about the conditions in Bobbie Jo's home; in particular, her inconsistency in following through on therapeutic services for herself and her children.
 {¶ 10} At another review hearing on February 12, 2002, it was reported that Bobbie Jo had again lost her housing. At this time, Bobbie Jo was staying at the Villa Rosa Motel in Painesville Township. The court also found that Billy and Jessica had not been to counseling for some time and that Bobbie Jo had not been attending to her mental health issues and had not obtained a drug and alcohol assessment. The court ordered Bobbie Jo to schedule counseling appointments for herself, Jessica, and Billy, and to obtain Billy's psychiatric medication within ten days. Bobbie Jo failed to do so.
 {¶ 11} On February 27, 2002, Lake Family Services again moved for temporary custody of Bobbie Jo's children. Lake Family Services also filed a dependency complaint in regards to Jordan, alleging that Bobbie Jo did not have stable housing and that her failure to meet her own mental health needs prevented her from providing for Jordan's needs. On March 20, 2002, the court granted Lake Family Services custody of Jessica, Billy, and Jordan.
 {¶ 12} Further amendments were made to Bobbie Jo's case plan, which now required that the children have appropriate adult supervision at all times, that Jessica and Billy not be left alone with each other or with other children at any time, that Jordan have his developmental delays assessed, that Jessica and Billy receive therapeutic counseling and that Bobbie Jo receive therapeutic counseling as well as case management and medication management, and that Bobbie Jo cooperate with a drug and alcohol assessment.
 {¶ 13} By August 2002, Bobbie Jo had completed a drug and alcohol assessment with Dick Brazus of Ohio Medical Counseling Services and was attending counseling with Brazus for substance abuse, anger management, and other mental health issues. She admitted that she had continued to use marijuana to relieve stress. Bobbie Jo had also begun counseling with Glenda Weinberg at Western Reserve Counseling, although she was not attending consistently. A review hearing was held by the court on November 21, 2002, at which the court ordered Bobbie Jo to reinitiate counseling with Weinberg, continue counseling with Brazus, maintain her sobriety, and demonstrate effective parenting skills during supervised visitation with her children (at this point, once a week). In January 2003, the semiannual review was filed, noting that Bobbie Jo continued counseling with Brazus and Weinberg and that Bobbie Jo had taken and passed home drug tests. The review also indicated that Billy was receiving weekly counseling and that Jessica had been placed at Lincoln Place, a residential treatment facility for sexual offenders.
 {¶ 14} On March 6, 2003, Lake Family Services filed its motion for permanent custody of Jessica, then age eleven, Billy, then age seven, and Jordan, then age two. Subsequent to the motion being filed, Bobbie Jo tested positive for marijuana. A hearing on the motion was held on July 28 and July 30, 2003.
 {¶ 15} On August 22, 2003, the juvenile court rendered its decision granting Lake Family Services permanent custody of Jessica, Billy, and Jordan. The juvenile court made the following findings: "[R]easonable efforts have been made to avoid removal of the children, but to remain in the home would be contrary to the children's best interest * * *. The testimony and evidence in this matter reflect that [the] mother has not been able, at any time, to properly parent these children for many reasons * * *. She has, at various times throughout, been dependent upon drugs which severely limited her ability to properly provide for the children. She has made attempts to discontinue this use and was clean from November, 2002 to June, 2003, but unfortunately, again resorted to marijuana, knowing full well that such use would negatively affect her case for return of her children. Mother * * * has not always exercised good judgment in her relationship with men, and as a result has unintentionally allowed the children to either be placed in a position of peril, or to remain there. It is further clear that mother suffers from some very concerning personality disorders, as well as financial hardships. All of these have resulted in substantial emotional instability and depression. * * * [B]ecause of the tumult, uncertainty and chaos of these previous [living] environments, the children suffer from some very serious disabilities which now require extensive counseling and treatment. It is agreed by all experts that Jessica and Billy should not reside together because of the sexual victimization that previously occurred. Mother did not, and has not, recognized the need for such treatment, either for the children or herself. She has continuously missed either counseling or medical appointments and has irresponsibly failed to provide the necessary medication, all of which were detrimental to the children. * * * [T]he Court can only comment that mother's attempts at visiting and/or maintaining relationships with the children [while in Lake Family Services' custody] have been futile, at best."
 {¶ 16} Bobbie Jo timely brings error and raises the following assignments of error:
 {¶ 17} "[1.] The trial court erred in ruling that the GAL report submitted the morning of trial, and the report submitted on August 6, 2003, met the statutory requirements of R.C.2151.414(C).
 {¶ 18} "[2.] The Juvenile Court erred in failing to discuss the best interests statutory factors under R.C. 2151.414(D) in awarding permanent custody of the Ridenour children to LCDJFS [Lake Family Services].
 {¶ 19} "[3.] The trial court erred by failing to appoint counsel for the children.
 {¶ 20} "[4.] The judgment that permanent custody should be awarded to the LCDJFS and that the children could not be placed with appellant within a reasonable time is against the manifest weight of the evidence, insufficient, and contrary to law, as appellant substantially remedied the conditions causing initial removal."
 {¶ 21} Under her first assignment of error, Bobbie Jo argues that the judgment must be reversed on the grounds that the guardian ad litem failed to submit a timely report prior to the permanent custody hearing as required by R.C. 2151.414(C) and, as a result, she was denied the opportunity to cross examine the guardian ad litem regarding his report. In addressing this assignment of error, as well as the second and third assignments of error, we must consider the purpose of the guardian ad litem in permanent custody proceedings.
 {¶ 22} Pursuant to R.C. 2151.281(B)(1), "[t]he court shall appoint a guardian ad litem to protect the interest of a child in any proceeding concerning an alleged abused or neglected child and in any proceeding [regarding a motion for permanent custody]." R.C. 2151.281(D) provides that "[t]he court shall require the guardian ad litem to faithfully discharge the guardian ad litem's duties and, upon the guardian ad litem's failure to faithfully discharge the guardian ad litem's duties, shall discharge the guardian ad litem and appoint another guardian ad litem." A guardian ad litem "shall perform whatever functions are necessary to protect the best interest of the child." R.C. 2151.281(I); In re Baby Girl Baxter (1985),17 Ohio St.3d 229, 232 ("The role of guardian ad litem is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest.").
 {¶ 23} R.C. 2151.414(C) provides that "[a] written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing [on permanent custody] * * * but shall not be submitted under oath." The failure of the guardian ad litem to timely file a written report as required is "a dereliction of statutory duty and error." Inre Breslav (Apr. 13, 2000), 8th Dist. No. 75468, 2000 Ohio App. LEXIS 1655, at 20, citing In re Malone (May 11, 1994), 4th Dist. No. 93CA2165, 1994 Ohio App. LEXIS 2140, at 30.
 {¶ 24} Many "courts have considered the misfeasance, or nonfeasance, of a guardian ad litem under a `harmless error' standard of review when * * * the parents can demonstrate no prejudice from the failure to strictly comply with statutory requirements." (Citations omitted.) Malone at 31. For example, if the report was not filed prior to the hearing, but counsel for all parties had a copy of the report during the hearing, the error was considered harmless. In re James, 10th Dist. No. 03AP-373, 2003-Ohio-5208, at ¶ 35. Also, no prejudice was found where the report was filed after the hearing, but the guardian ad litem testified at the hearing regarding the substance of his recommendation. In re Johns, 5th Dist. No. 2003CA00146, 2003-Ohio-3621, at ¶¶ 9-12; In re Marie K. (June 8, 2001), 6th Dist. No. L-01-1036, 2001 Ohio App. LEXIS 2549, at 5-6; In reNethers (June 5, 2000), 5th Dist. No. 99 CA 104, 2000 Ohio App. LEXIS 2353, at 9-10. It has even been held that the failure to submit any written report is not prejudicial when there is "ample evidence to support the [court's] ruling without the guardian ad litem's written recommendation." In re R.C., 8th Dist. No. 82453, 2003-Ohio-7062, at ¶ 22; Malone at 32 (failure to submit a written report was not prejudicial where there was "more than sufficient evidence to warrant the termination of parental rights beyond the [oral] report of the guardian ad litem").
 {¶ 25} In the present case, we find that the guardian ad litem assigned to the children did not fulfill his purpose under R.C. 2151.414(C) by failing to file a guardian ad litem's report prior to the commencement of the hearing on Lake Family Service's motion for permanent custody. The guardian was initially assigned to the Ridenour case in 1998. As Lake Family Services notes in its appellate brief, the guardian ad litem "attended all but one hearing in the approximately six (6) year total history of the case, more than any individual, aside from Ms. Ridenour." Despite this extensive involvement, the guardian was unable to issue a report prior to the hearing on Lake Family Services' motion for permanent custody. Instead, on the morning of the hearing, the guardian submitted a "pre-hearing report" in which he "offers no opinion regarding permanent custody and the factors LCDJFS must prove." The guardian explains that the "reason for this opinion is that no evidence has been taken at this time and this GAL prefers to hear the evidence before rendering an opinion on the ultimate issue." After six years involvement, the guardian ad litem was unable to offer an opinion until he heard evidence. The role of the guardian ad litem is to provide the juvenile court with an independent evaluation of the issues, particularly the children's best interests. In re Hoffman, 97 Ohio St.3d 92,2002-Ohio-5368, at ¶ 13 ("[F]rom the plain language of the statute, it is reasonable to conclude that the purpose of enacting R.C. 2151.414(C) is to give the court information, inaddition to that elicited at the hearing, to assist it in making sound decisions concerning permanent custody placements.") (Emphasis added.). The guardian's recommendation, then, should not be based on the testimony given at the hearing, but on the guardian's own experience in the case. The report should be an independent source of information to guide the juvenile court in making its decision. Here, the guardian apparently rendered an opinion based on the evidence presented at the hearing.
 {¶ 26} The guardian ad litem testified during the hearing as to Jessica's wishes regarding her own custody. The guardian also testified to the love and affection that Bobbie Jo and her children have for each other, the possibility of a planned permanent living arrangement for the children, and his opinion that it was in the children's best interests that Lake Family Services be granted permanent custody. The guardian was then cross-examined by Bobbie Jo's attorney.
 {¶ 27} The guardian ad litem filed his report on August 6, 2003, six days after the close of the permanent custody hearing. This report contains an analysis of the evidence presented regarding Bobbie Jo's fitness to parent her children. The report contains the guardian's recommendation that "permanent custody be granted to LCDJFS so that a permanent adoptive placement can be secured for these children," which recommendation was consistent with the guardian's testimony at the custody hearing. The guardian's report did not discuss any of the children's own wishes regarding their custody. On August 22, 2003, the court issued its decision terminating Bobbie Jo's parental rights.
 {¶ 28} The question before this court is whether the guardian ad litem's failure to timely file his report was prejudicial so as to require the reversal of the juvenile court's judgment.[4] Under the specific facts of this case, we conclude that such reversal is not warranted. In the present case, the guardian testified at the hearing as to his recommendation regarding the children's custody. The guardian's recommendation at the hearing was the same one he delivered in his written report subsequently filed with the court. The guardian's recommendation was consistent with the evidence presented at the hearing. Moreover, no new facts, evidence, or opinions were presented in the report. In this situation, Bobbie Jo cannot demonstrate any prejudice in the court's ultimate decision as a result of the guardian's report being filed after the hearing.
 {¶ 29} In Johns, the guardian ad litem filed her report eight days after the hearing on permanent custody, but testified orally at the hearing. Id. at ¶¶ 9, 11. The court affirmed the decision to grant the motion for permanent custody, reasoning that "[t]he guardian ad litem's written report presented no new facts or thoughts on the relevant issues than had already been testified to by the caseworkers [at the hearing]. The trial court's findings of fact and conclusions of law do not specifically state any reliance on the guardian's views." Id. at ¶ 12. Similarly, in In re Tyas, 12th Dist. No. CA2002-02-010, 2002-Ohio-6679, a reviewing court affirmed the lower court's decision to grant the county permanent custody where the "majority of persons interviewed in the guardian ad litem's report testified at the hearing * * * [and,] [t]hus, the accuracy of the information provided [in the report] and the credibility of the statements were capable of being tested at the hearing." Id. at ¶ 17. Therefore, it was not necessary to recognize the lack of the guardian's cross examination on the report under a plain error analysis. Id. at ¶ 18.
 {¶ 30} Bobbie Jo relies on the Ohio Supreme Court's decision in Hoffman, and this court's decision in In re Salsgiver,
11th Dist. No. 2002-G-2477, 2003-Ohio-1206, in support of her argument that the lower court's decision must be reversed. InHoffman, the Ohio Supreme Court held that it was a violation of procedural due process not to allow a party in a permanent custody proceeding to cross-examine the guardian ad litem concerning the contents of his report and the basis for his custody recommendation when the guardian ad litem's report is a factor in the trial court's decision. Id., at syllabus. In rendering this decision, the Supreme Court observed that "[w]ithout these safeguards, there are no measures to ensure the accuracy of the information provided and the credibility of those who made statements." Id. at ¶ 25. Based on the Hoffman
decision, this court held "that the purpose for requiring the guardian ad litem to submit his report prior to trial is to give the parties an opportunity to rebut any assertion contained in the report." Salsgiver at ¶ 23.
 {¶ 31} Both of these decisions, however, are distinguishable, on their facts. In Hoffman, the guardian ad litem filed a timely report, but the trial court did not allow the parties to cross-examine the guardian about that report either during the hearing or afterwards. Id. at ¶¶ 3-5. Hoffman does not apply to the present situation because, in this case, the guardian ad litem was cross-examined on his testimony as to Jessica's preference and the permanent custody issue at the hearing. InSalsgiver, the guardian ad litem was asked to file a supplemental report regarding the child's wishes as to her custody after the hearing on the motion for permanent custody had been held. Id. at ¶ 14. In Salsgiver, unlike the present case, the subsequent report filed put new evidence before the trial court, evidence "which had not been subjected to the rigors of the adversarial process." Id. at ¶ 27. Salsgiver does not
apply to the present situation because the guardian's report in this case presented no new facts or recommendations that were not already introduced during the guardian's testimony at the hearing, when the guardian ad litem was available for cross examination. To require the juvenile court to allow the cross examination of the guardian a second time on the same evidence and opinions that he has already been cross-examined would be both superfluous and a waste of judicial resources.
 {¶ 32} Bobbie Jo's first assignment of error is overruled.
 {¶ 33} Under Bobbie Jo's second assignment of error, she argues that the juvenile court failed to discuss the required "best interest of the child" factors provided in R.C.2151.414(D).
 {¶ 34} For the juvenile court to grant a motion for permanent custody, the court must determine, "by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody" and that one of the factors set forth in R.C. 2151.414(B)(1)(a) through (d) apply. R.C.2151.414(B)(1).[5] Clear and convincing evidence is that measure of proof "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 35} In determining the best interest of a child for the purposes of a motion for permanent custody, "the court shall consider all relevant factors, including, but not limited to * * * (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care-givers and out-of-home providers * * *; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child * * *; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 36} "This court has consistently held that the provisions of R.C. 2151.414(D) are mandatory and `must be scrupulously observed.'" In re Meyer, 11th Dist. No. 2003-A-0064, 2003-Ohio-4605, at ¶ 24, quoting In re Hommes (Dec. 6, 1996), 11th Dist. No 96-A-0017, 1996 Ohio App. LEXIS 5515, at 4. "Thus, the failure to discuss each of the factors set forth in R.C.2151.414(D) when reaching a determination concerning the best interest of the child is prejudicial error." In re Jacobs (Aug. 25, 2000), 11th Dist. No. 99-G-2231, 2000 Ohio App. LEXIS 3859, at 13.
 {¶ 37} In the present case, the judgment entry states that the court has considered all relevant factors, "including those set out by the statute, Section 2151.414(D)." Bobbie Jo argues that the court has failed to discuss three of these factors adequately.
 {¶ 38} Bobbie Jo first maintains that the court did not discuss the children's relationship with their mother. Bobbie Jo relies on this court's decision in Salsgiver, where we reversed a grant of permanent custody when the court did not specifically discuss the child's relationship with her mother, although it did discuss the interaction of the child with her father and her foster parents. Id. at ¶ 26. We disagree.
 {¶ 39} Here, the court's judgment entry discusses at length Bobbie Jo's efforts to care for her children and notes that the failure of these efforts "does not detract from the clear evidence that she deeply loves them." Beyond this, the ability to comment on any interaction between the children and Bobbie Jo has been hampered by the fact that the children have been out of her custody for seventeen months and by the fact of Bobbie Jo's own "futile" efforts at visiting and/or maintaining a relationship with her children during their separation.
 {¶ 40} Bobbie Jo next argues that the juvenile court erred in its consideration of the children's need for a legally secure placement by not discussing alternatives to granting Lake Family Services permanent custody, such as a planned permanent living arrangement. We disagree.
 {¶ 41} The court discussed at length the children's need for a legally secure placement, noting in particular that Jessica and Billy should not reside together because of the sexual victimization that occurred between them and that it is unlikely that any single person or family would be able to provide the care, supervision, and nurturing that these children need for all the children to remain together. All the children suffer from disabilities requiring special treatment. As for the possibility of Bobbie Jo providing the necessary care, the court found that Bobbie Jo has not been able to properly parent the children at any time and discussed the reasons Bobbie Jo has been unable to do so. At the hearing, the possibility of a planned permanent living arrangement was discussed as a possibility only for Jessica. The fact that a planned permanent living arrangement was discussed at the hearing does not require the court to consider the possibility in its discussion of the children's need for legally secure placement. The court has adequately established that Bobbie Jo is not a proper party to care for her children.
 {¶ 42} Finally, Bobbie Jo argues that the court failed to adequately discuss the children's wishes. As regards to this factor, the juvenile court found as follows: "Based on the age of the children, it is clear that Billy and Jordan are not mature enough to express a meaningful opinion. Jessica is sufficiently mature to do so and has clearly expressed her desire not to return to the custody of her mother." Having reviewed the record, we find that the court did not and could not have adequately discussed the factor of the children's wishes.
 {¶ 43} R.C. 2151.414(D)(2) requires the court to consider the children's wishes "as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity." The guardian ad litem's report filed in this case completely fails to mention the children's wishes. During his testimony at the hearing, the guardian admitted that he had only had the opportunity to speak with Jessica for about fifteen minutes about her wishes. At no time did the guardian meet with Billy or Jordan to discuss their wishes regarding their custody. Therefore, it is impossible to determine exactly what evidence the juvenile court relied on in concluding that "Billy and Jordan are not mature enough to express a meaningful opinion."
 {¶ 44} Jordan, who was three years old at the time, could be said to be too young to express a preference as to his custody. It would have been proper for the guardian ad litem to address this factor in his report. R.C. 2151.414(D)(2); Salsgiver, at ¶ 27. Billy, however, was eight years old at the time of the hearing and clearly of an age when he might possess the maturity to express a meaningful opinion regarding custody.
 {¶ 45} Deanna Fickes, a community support provider for Homes for Kids, who works with Billy, testified as to Billy's desire to be with his mother. Pursuant to R.C. 2151.414(D), the juvenile court must consider this desire as a factor affecting Billy's best interests with due regard for Billy's maturity. In reWilliams, 11th Dist. Nos. 2003-G-2498 and 2003-G-2499, 2003-Ohio-3550, at ¶ 30, citing Salsgiver at ¶ 26 ("a judgment that fails to discuss a child's wishes, expressed through its guardian ad litem, is `facially defective' and must be reversed"). Before the juvenile court can do this, it must have some evidence before it concerning both Billy's desire and his maturity.
 {¶ 46} The Tenth District Court of Appeals reversed a grant of permanent custody in a case with similar facts on the grounds that the record failed to contain reliable evidence of the children's wishes. In re Swisher, 10th Dist. Nos. 02AP-1408 and 02AP-1409, 2003-Ohio-5446. In Swisher, as in this case, the children did not testify at the hearing and were not interviewed by the trial judge during an in camera hearing. Id. at ¶ 40. The reports filed by the guardian ad litem prior to and after the permanent custody hearing did not discuss the children's wishes. Id. The court relied on evidence of the children's wishes as expressed by the children's caseworkers. The Tenth District found these errors to be dispositive of the appeal and reversed. Id. at ¶ 41. See, also, In re Williams (Mar. 20, 2001), 10th Dist. No. 00AP-973, 2001 Ohio App. LEXIS 1247.
 {¶ 47} Furthermore, it was error for the juvenile court to rely on the testimony of Billy's caseworker as evidence of his wishes regarding his custody. The statute clearly provides that the court is to consider "[t]he wishes of the child, asexpressed directly by the child or through the child's guardianad litem." R.C. 2151.414(D)(2) (Emphasis added.); In re Smith,
9th Dist. No. 20711, 2002-Ohio-34, 2002 Ohio App. LEXIS 2, at 16-17 ("the caseworker's testimony * * * cannot be considered as an expression of the child's wishes in lieu of the guardian adlitem's report"); In re C.M., 9th Dist. No. 21372, 2003-Ohio-5040, at ¶ 15.
 {¶ 48} Bobbie Jo's second assignment of error has merit.
 {¶ 49} In the third assignment of error, Bobbie Jo argues that the children should have been appointed counsel to advocate for their wishes regarding custody. "Every party [to a juvenile court proceeding] shall have the right to be represented by counsel." Juv.R. 4(A); R.C. 2151.352 ("[c]ounsel must be provided for a child not represented by the child's parent, guardian, or custodian").[6] "It is not necessary that any party raise the issue with the court before the right attaches." Williams,
2003-Ohio-3550, at ¶ 19.[7] Although the right to counsel is a basic presumption in juvenile court proceedings, a court is not always required to appoint counsel for children who are the subject of a motion to terminate parental rights. Id. at ¶ 20. A guardian ad litem may act as counsel for the children provided that there is no conflict of interest between the guardian's recommendation and the children's wishes and provided that the court expressly state that it is appointing the guardian ad litem to act in this dual capacity. Id., citing In re Clark,141 Ohio App.3d 55, 60, 2001-Ohio-4126; In re Emery, 4th Dist. No. 02CA40, 2003-Ohio-2206, at ¶ 11 (where the court failed to indicate in the record a dual appointment for the guardian ad litem, the "children were not represented by appointed counsel during the proceedings").
 {¶ 50} A court may also decide that a child is too young or immature to benefit from the appointment of counsel. Williams,
2003-Ohio-3550, at ¶ 21. Before a court makes this decision, it must conduct some investigation into the child's wishes and level of maturity. Id. at ¶ 18.
 {¶ 51} "We are not requiring that legal counsel be appointed every time a child states a desire to remain with a parent. However, when a child consistently expresses a desire to be with a parent, then a juvenile court should investigate, giving due regard to the child's maturity and understanding of the proceedings, and make a ruling about whether an attorney should be appointed to represent the child's interest and expressed wishes." In re Williams, 11th Dist. Nos. 2002-G-2454 and 2002-G-2459, 2002-Ohio-6588, at ¶ 26. At a minimum, a court should conduct an in camera interview with the child before making its decision that a child lacks the maturity to benefit from having appointed counsel. Williams, 2003-Ohio-3550, at ¶ 18.
 {¶ 52} In the present case, the court did not appoint counsel for the children, did not expressly appoint the guardian ad litem to act as their counsel, and did not make any determination as to whether any of the children lacked the maturity to benefit from the appointment of counsel. As noted above, Jessica's wishes regarding custody were arguably the same as the guardian ad litem's recommendation. Therefore, the guardian could have served as counsel for Jessica had the court appointed him. But, in the case of Billy and Jordan, there was no evidence regarding their wishes and/or level of maturity on which the court could have made any decision regarding the appointment of counsel. Accordingly, Bobbie Jo's third assignment of error has merit.
 {¶ 53} Under the fourth and final assignment of error, Bobbie Jo asserts that the juvenile court's finding that the children could not be placed with Bobbie Jo within a reasonable time is against the manifest weight of the evidence. In the present case, the court proceeded under R.C. 2151.414(B)(1). In order to grant Lake Family Services permanent custody under R.C. 2151.414(B)(1), the court only needed to make two determinations: (1) that granting Lake Family Services permanent custody would be in the best interests of the children, and (2) that the children were in the temporary custody of Lake Family Services for twelve or more months of a consecutive twenty-two month period. It is unnecessary for the court to make any further findings. In reMatthews, 11th Dist. No. 2003-A-0110, 2004-Ohio-1158, at ¶ 41.
 {¶ 54} Although the juvenile court made a finding that the children could not or should not be placed with their parents within a reasonable time, such a finding was unnecessary under R.C. 2151.414(B)(1). In re Cather, 11th Dist. Nos. 2002-P-0014, 2002-P-0015 and 2002-P-0016, 2002-Ohio-4519, at ¶ 43; In reRodgers (2000), 138 Ohio App.3d 510, 516-521 (discussing amendments to R.C. 2151.414). Bobbie Jo's fourth assignment of error is without merit.
 {¶ 55} Given the procedural deficiencies in the present case, this court has no choice but to remand this cause to the juvenile court for further proceedings. Although we found the guardian ad litem's failure to file a timely report to be harmless error under Bobbie Joe's first assignment of error, that failure prevented the juvenile court from properly considering the children's wishes as required by R.C. 2151.414(D)(2) and from determining whether the children are entitled to independent counsel. We are unable to find these errors harmless. To so hold would eviscerate the operation of R.C. 2151.414, as courts would be at liberty to ignore the procedural requirements of the statute provided the reviewing court approved of the final result. Cf. Hoffman, 2002-Ohio-5368, at ¶ 14 (in a proceeding to permanently terminate parental rights "parents `must be afforded every procedural and substantive protection the law allows'") (Citation omitted.).
 {¶ 56} This cause is remanded to the juvenile court. On remand, the juvenile court is directed to appoint a new guardian ad litem per its authority under R.C. 2151.281(D) to remove a guardian that fails to discharge his or her duties faithfully. The new guardian ad litem is instructed to meet with the children to discuss their wishes regarding their custody and, thereafter, file a written report with the juvenile court expressing their wishes, as well as addressing the children's level of maturity. Based on this report, the juvenile court will determine if the children's wishes regarding their custody conflict with the guardian ad litem's recommendation. Provided there is no conflict, the court may appoint the guardian ad litem to serve as counsel for the children. If there is evidence that the children's wishes are different from the guardian's recommendation, the court should determine whether, based on the children's level of maturity and understanding of the proceedings, independent counsel should be appointed for the children. The court may conduct an in camera interview with the children, if necessary, in making this determination.
 {¶ 57} The juvenile court is then instructed to hold a hearing on the sole issue of the children's wishes, as expressed directly by the children or through the guardian ad litem, and render a new decision on Lake Family Services' motion based on the evidence already in record and on the evidence admitted after remand
 {¶ 58} The August 22, 2003 judgment entry of the Juvenile Division of the Lake County Court of Common Pleas granting permanent custody of Jessica, Billy, and Jordan Ridenour to Lake County Department of Job and Family Services is reversed and this cause is remanded for further proceedings consistent with this opinion.
O'Neill, J., concurs.
DIANE V. GRENDELL, J., dissents with dissenting opinion.
[1] The August 22, 2003 judgment entry also terminated the parental rights of Jessica's putative father, Cory Long, Billy's putative father, Ramon Quinones, and Jordan's putative father, David Ewell. Despite the fact that all statutory notice and service requirements had been complied with, none of the putative fathers were present at the hearing on permanent custody. None of the putative fathers have appealed the termination of their parental rights.
[2] Twenty-six amended case plans would ultimately be adopted before Lake Family Services moved for permanent custody.
[3] These issues arose as a result of Jessica being raped by another member of Bobbie Jo's household.
[4] Prior to the start of the hearing, Bobbie Jo's attorney moved the court to dismiss the motion based on the guardian ad litem's failure to comply with R.C. 2151.414(C). The court overruled this motion finding that the guardian had complied with the requirements of the statute. Accordingly, we find that Bobbie Jo has preserved this issue for review. We note that, after the guardian filed a written report on August 6, 2003, Bobbie Jo never moved the court to hold an additional hearing on the report. In In re Salsgiver, 11th Dist. No. 2002-G-2477, 2003-Ohio-1206, this court held that the juvenile court was required to hold an additional hearing after receiving the guardian ad litem's report, despite appellant's failure to move for such a hearing. Id. at ¶¶ 28-30.
[5] In the present case, the court determined that the children had been in the temporary custody of Lake Family Services for seventeen consecutive months since March 2002, and, thus, R.C.2151.414(B)(1)(d) applied. R.C. 2151.414(B)(1)(d) ("[t]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period").
[6] We note that the Ohio Supreme Court has certified a conflict between In re Williams, 11th Dist. Nos. 2003-G-2498 and 2003-G-2499, 2003-Ohio-3550, and In re Alfrey, 2nd Dist. No. 01CA0083, 2003-Ohio-608, on the following issue: "Whether children who are the subject of a motion to terminate parental rights are `parties' to that proceeding for the purposes of Juv.R. 4(A) and R.C. 2151.352, requiring the appointment of counsel." In re Williams, 99 Ohio St.3d 1540, 2003-Ohio-4671.
[7] We note that early in this case, on September 11, 2000, Bobbie Jo's counsel did move the court to appoint counsel for the children on the grounds that the children's wishes were in conflict with the "advocacy of the Guardian ad Litem." The trial court denied the motion that same day.