OPINION *Page 2 
 NUNC PRO TUNC {¶ 1} Appellee, the Muskingum County Children Services, has been involved with appellant, Windy White, and her children since December of 1996. The children are H.W. born November 10, 1994, B.W. born October 11, 1995, T.W. born February 11, 1997, and K.W. born February 20, 2000. Father of H.W. is Otis Moses; father of B.W., T.W., and K.W. is Robert White. On June 30, 2005, the children were adjudicated dependent, and were placed in the temporary custody of Patrick Myers under protective supervision, then foster care, and then the interim temporary custody of appellee.
 {¶ 2} On October 13, 2006, appellee filed a motion for permanent custody of all four children. Hearings were held on July 31, 2007 and February 7, 2008. On March 4, 2008, the trial court conducted an in camera interview of the children. By entry filed April 8, 2008, the trial court granted permanent custody of the children to appellee.
 {¶ 3} Appellant filed an appeal and this matter is now before his court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND THE APPELLANT WAS DEPRIVED DUE PROCESS OF LAW WHEN THE TRIAL COURT FAILED TO ALLOW APPELLANT AND HER COUNSEL TO BE PRESENT DURING THE IN CAMERA INTERVIEW OF THE CHILDREN."
 II {¶ 5} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND THE APPELLANT WAS DEPRIVED DUE PROCESS OF LAW WHEN THE TRIAL COURT FAILED TO RECORD THE IN CAMERA INTERVIEW OF THE CHILDREN." *Page 3 
 III {¶ 6} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO STRIKE THE GUARDIAN AD LITEM'S REPORTS."
 IV {¶ 7} "THE TRIAL COURT ERRED IN FAILING TO DISMISS CHILDREN SERVICES' MOTION FOR PERMANENT CUSTODY."
 V {¶ 8} "THE TRIAL COURT ERRED IN GRANTING CHILDREN SERVICES' MOTION FOR PERMANENT CUSTODY."
 I, II {¶ 9} Appellant's first two assignments of error challenge the trial court's procedures in conducting the "in camera" interview of the children. Appellant claims the trial court erred in not permitting her or her counsel to be present during the interview, and erred in failing to record the interview. We disagree.
 {¶ 10} A trial court is given broad discretion in conducting an in camera interview. In the Matter of: Donald Matis (May 24, 1995), Summit App. No. 16961. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983) 5 Ohio St.3d 217.
 {¶ 11} Appellant argues she was denied procedural and substantive due process when the trial court denied her request to be present during the in camera interview. In response to appellant's request to be present, the trial court asked the parties to proffer any questions they deemed appropriate. *Page 4 
 {¶ 12} In reviewing a due process argument similar to the one presented sub judice, our brethren from the Ninth District stated the following:
 {¶ 13} "In proceedings which concern the termination of parental rights, what procedural requirements are owed to parents is determined by balancing three considerations: (1) the private interests affected by the proceeding; (2) the risk of error created by the state's chosen procedure; and (3) the countervailing government interest in supporting the use of the challenged procedure. Matthews v. Eldridge (1976), 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893; In re KristaHouse (Feb. 24, 1992), Butler App. Nos. CA91-01-016 CA91-02-022, unreported. While parents enjoy a fundamental liberty in the care, custody and management of their children, In re Murray (1990),52 Ohio St.3d 155, 157, 556 N.E.2d 1169, it is often important for a judge to ascertain the desires and concerns of a child in relation to custody issues. Often, this can be best accomplished in the isolation of chambers, exclusive of courtroom formalities and the unpleasantness of cross-examination. See Whitaker at 218. Further, when the court narrows its in camera questioning of the child to include only custody preferences, the utility of cross-examination is minimized." In theMatter of: Donald Matis, supra.
 {¶ 14} We concur with the above analysis. The trial court incorporated the parties' suggested questions into the interview. In its April 8, 2008 judgment entry, the trial court acknowledged the following:
 {¶ 15} "[6.]b. The minor children have expressed their wish(es) to the Guardian ad litem, and to this court during their in camera interviews. The minor children have *Page 5 
made conflicting statements regarding their wishes. The minor children have expressed their desire to remain with their foster family; the children have also expressed their desire to return to their mother."
 {¶ 16} After a review of the in camera interview transcript, we find that essentially no new evidence was received by the trial court. No procedural or substantive rights were violated in this case.
 {¶ 17} Appellant also claims the trial court failed to record the in camera interview. We find such claim to be wrong, as a sealed transcript was filed on January 21, 2009, and was reviewed sub judice.
 {¶ 18} Assignments of Error I and II are denied.
 III {¶ 19} Appellant claims the trial court erred in failing to strike the guardian ad litem's reports. Appellant claims the reports contained inadmissible hearsay that was not substantiated by the guardian's testimony at trial.
 {¶ 20} In In re Robinson/Brooks Children, Stark App. No. 2004-CA-00094, 2004-Ohio-6142, ¶ 13, this court stated the following:
 {¶ 21} "R.C. 2151.414(C) provides a written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of hearing held pursuant to Division A of the section, but shall not be submitted under oath. In the case of In Re: Ridenour (April 16, 2004), Lake Appellate Nos. 203-L-146, 203-L-147, and 203-L-148,2004-Ohio-1958, the 11th District Court of Appeals found the role of a guardian ad litem is to provide the court with an independent evaluation of the issues, particularly the children's best interests, citing In Re: Hoffman, 97 Ohio St.3d 92, 776 N.E.2d 485,2002-Ohio-5368. *Page 6 
Thus, the purpose of the guardian ad litem's report is to give the court information in addition to that elicited at the hearing. It is based not on the testimony given at the hearing but, on the guardian's experience in the case, and must be an independent source of information to guide the juvenile court in making its decision. This court held a guardian ad litem's report should not be considered evidence in In the Matter ofDuncan/Walker Children (1996), 109 Ohio App.3d 841, 673 N.E.2d 217."
 {¶ 22} The guardian participated in the trial, but did not testify. Any party to the proceeding had the right and opportunity to request that the guardian testify.
 {¶ 23} We acknowledge the trial court in its judgment entry at ¶ 6.b. noted it reviewed the guardian's reports as cited supra. However, in reading the trial court's decision as a whole, there is no indication that the trial court did not render its own independent judgment on the issue.
 {¶ 24} Assignment of Error III is denied.
 IV {¶ 25} Appellant claims the trial court erred in not granting her motion to dismiss pursuant to R.C. 2151.414(A)(2). We disagree.
 {¶ 26} R.C. 2151.414 governs procedures upon the filing of a motion for permanent custody. Subsection (A)(2) states the following:
 {¶ 27} "The court shall hold the hearing scheduled pursuant to division (A)(1) of this section not later than one hundred twenty days after the agency files the motion for permanent custody, except that, for good cause shown, the court may continue the hearing for a reasonable period of time beyond the one-hundred-twenty-day deadline. The court shall issue an order that grants, denies, or otherwise disposes of the motion *Page 7 
for permanent custody, and journalize the order, not later than two hundred days after the agency files the motion.
 {¶ 28} "If a motion is made under division (D)(2) of section 2151.413
of the Revised Code and no dispositional hearing has been held in the case, the court may hear the motion in the dispositional hearing required by division (B) of section 2151.35 of the Revised Code. If the court issues an order pursuant to section 2151.353 of the Revised Code granting permanent custody of the child to the agency, the court shall immediately dismiss the motion made under division (D)(2) of section 2151.413 of the Revised Code.
 {¶ 29} "The failure of the court to comply with the time periods set forth in division (A)(2) of this section does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court."
 {¶ 30} Appellee filed the motion for permanent custody on October 13, 2006. A pre-hearing conference was set for November 1, 2006. See, Order filed October 13, 2006. On November 14, 2006, Robert White filed a motion in opposition to the motion for permanent custody or in the alternative, set a hearing so he could have additional time to work on the case plan. The trial court set a hearing for March 22, 2007 to allow him "additional time to work his case plan." See, Entry filed December 20, 2006. On February 28, 2007, appellant filed a motion for a ninety day continuance, as she was currently in in-patient treatment at "Stepping Stone" in Portsmouth, Ohio. The trial court granted the request and continued the matter to July 31, 2007. See, Entry filed March 21, 2007. *Page 8 
 {¶ 31} On July 26, 2007, appellant filed another request for a continuance. By entry filed same date, the trial court denied the request. On July 30, 2007, appellant filed a motion to bifurcate the trial, asking the trial court to bifurcate the trial and recess for ninety days if the state could not complete its case in one day. By entry filed same date, the trial court granted the motion. Additional hearings were scheduled for November 5 and 6, 2007. See, Entry filed August 14, 2007. On October 11, 2007, appellant filed a motion for a thirty day continuance of the November 2007 hearing dates. By judgment entry filed October 17, 2007, the trial court denied the motion.
 {¶ 32} On October 26, 2007, appellant filed with this court a complaint for writ of procedendo/motion to dismiss, arguing the trial court had not disposed of the motion for permanent custody in a timely manner pursuant to R.C. 2151.414(A)(2). While this writ was pending, appellant filed with the trial court a renewed motion to continue the November 2007 hearing dates. By entry filed November 6, 2007, the trial court continued the November 2007 hearing dates to February 6 and 7, 2008.
 {¶ 33} On January 15, 2008, this court issued an opinion denying appellant's writ as follows:
 {¶ 34} "It is well accepted law that a party is not permitted to complain of an error which said party invited or induced the trial court to make. Hastings Mut. Ins. Co. v. McCoy, 2007 WL 1462464, (Ohio App. 5 Dist.). Petitioner has requested four continuances, three of which have been granted. It is apparent the delays were at least precipitated by the requests of Petitioner. Petitioner cannot cause the delay and then complain the trial court accommodated him [her]. Therefore, we decline to order the *Page 9 
trial court to proceed immediately to complete the hearing and issue a ruling on the motion for permanent custody.
 {¶ 35} "* * *
 {¶ 36} "The writ of procedendo is being denied because the delays in this matter were granted mostly at the request of the Petitioner. The filing of an additional petition for a writ may be appropriate if this matter is further delayed due to the inaction or action of the trial court or of Children's Services." Windy White v. The Honorable Joseph A.Gormley, Muskingum App. No. CT07-0068, 2008-Ohio-171, ¶ 10 and 12.
 {¶ 37} We concur with the trial court that by appealing to the trial court's discretion and obtaining continuances, appellant cannot now complain about the delay. As we will address in Assignment of Error V, such delays worked to appellant's benefit.
 {¶ 38} Assignment of Error IV is denied.
 V {¶ 39} Appellant claims the trial court erred in granting permanent custody of the children to appellee. Appellant claims from August 2007 to the conclusion of the hearing on February 7, 2008, she has proven that she can be rehabilitated, and the children can be returned to her within a reasonable time. We disagree.
 {¶ 40} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential *Page 10 
elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 41} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 {¶ 42} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 43} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. *Page 11 
 {¶ 44} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
 {¶ 45} "(16) Any other factor the court considers relevant."
 {¶ 46} R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 {¶ 47} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 48} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 49} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period and, as described in division (D)(1) of *Page 12 
section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
 {¶ 50} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 51} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 52} In its April 8, 2008 judgment entry, the trial court acknowledged appellant's change of course as follows:
 {¶ 53} "[5.]j. Mother has been fairly regularly attending individual and group counseling for her substance abuse problems on an outpatient basis since April 26, 2007 through Muskingum Behavioral Health.
 {¶ 54} "k. Mother's substance abuse counselor testified that Mother was still in the `early recovery' phase; the counselor testified that Mother finally had a `turn around' in October 2007."
 {¶ 55} The trial court also acknowledged that prior attempts at recovery have never been successful:
 {¶ 56} "[5.]a. Mother was given a case plan and failed to comply with the objectives within a six-month period. Mother's case plan objectives have been the same for approximately three and one-half years.
 {¶ 57} "b. Mother has had a drug problem since 2003; Mother started abusing drugs on a regular basis in 2005. *Page 13 
 {¶ 58} "c. Mother has a long history of attempted recovery and relapse, her first attempt at treatment was an outpatient program in July 2004.
 {¶ 59} "d. Mother's case plan included successful completion of an in-patient substance abuse program.
 {¶ 60} "e. Mother completed the ninety day in-patient drug program through Stepping Stones in September 2005, but relapsed within one month. Mother was admitted into the in-patient drug program at Stanton Villa on March 7, 2005, but left on her own free will two days later. Mother again relapsed.
 {¶ 61} "f. Mother's latest attempt at an in-patient program was at Stepping Stones one more time; mother was administratively discharged from that program on April 18, 2007, after approximately one month, due to the Mother threatening a staff member.
 {¶ 62} "g. Upon her discharge from Stepping Stones in April 2007, Mother continued to abuse drugs. Mother tested positive for cocaine as late as July 18, 2007 and positive for alcohol as late as June 15, 2007."
 {¶ 63} Appellant's history of failing to recover from cocaine and alcohol abuse is well documented in the record. July 31, 2007 T. at 35, 59, 93, 111-113, 156, 165, 202. Appellant's turn around in October 2007 is also in the record, and appellant was described as being in the early stages of recovery even though she had been sober/drug free for some seven months at the time of the February 7, 2007 hearing. February 7, 2008 T. at 12-13, 15, 17-18, 21, 33, 68-69.
 {¶ 64} As noted by the trial court, appellant's turn around was some three and one-half years after appellee's intervention. Appellant has not had custody of her *Page 14 
children since 2005. July 31, 2007 T. at 155. As a result of appellant's addictions, the oldest child essentially became the parent to the others. February 7, 2008 T. at 92-93.
 {¶ 65} In our review of the entire hearing transcript and the trial court's decision, we find the trial court viewed the evidence with a "wide angle lens" and appellant's view is limited to a narrow focus of the last four months. Each view has a different perspective. The trial court's decision looked at the entire picture from start to finish. The evidence supports the trial court's conclusion that appellant had a less than motivated approach to fulfilling her case plan, and in fact, was miserably unsuccessful from November 2005 to October 2007. This time span is beyond anyone's view of a reasonable time for reunification, and essentially fits within the twenty-two month rule.
 {¶ 66} In contrast, appellant seeks to disregard the past, including arriving at visitations high, disorderly conduct charges, theft charges, and associating with convicted felons. July 31, 2007 T. at 16, 188, 224, 228; February 7, 2008 T. at 37, 40, 43.
 {¶ 67} Although the trial court was called upon to make a difficult decision, we find its reasoning and decision is supported by clear and convincing evidence. The trial court balanced over two years of non-compliance with the case plan against a few months of compliance.
 {¶ 68} Upon review, we find the trial court did not err in awarding permanent custody of the children to appellee.
 {¶ 69} Assignment of Error V is denied. *Page 15 
 {¶ 70} The judgment of the Court of Common Pleas of Muskingum County, Ohio, Juvenile Division is hereby affirmed.
Farmer, P.J., Gwin J., and Edwards, J., concur. *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio, Juvenile Division is affirmed. Costs to appellant. *Page 1