OPINION
{¶ 1} Appellant, Fredrica Snyder, appeals the judgment entry of the Ashtabula County Court of Common Pleas, Juvenile Division, terminating her parental rights over Alice Kangas and granting appellee, Ashtabula County Children Services Board, permanent custody of Alice Kangas. For the following reasons, we reverse the decision of the court below and remand the matter for proceedings consistent with this opinion.
 {¶ 2} Alice Kangas was born on January 30, 1994, to Fredrica Snyder and Gerald Kangas. Alice was diagnosed with autism by the age of three. Alice is also mentally retarded and has attention deficit hyperactivity disorder ("ADHD"). Thomas Sterba was born August 23, 1996, to Fredrica Snyder and Marshall Sterba. In April 2004, Ashtabula Children Services obtained temporary emergency custody of Alice and Thomas in the following circumstances. On April 1, 2004, Amy Piotrowski, a teacher at Happy Hearts School, a school for special needs children, reported that Alice was complaining that her mother's boyfriend was touching her inappropriately. Piotrowski also reported that Alice had dried feces in her underwear and complained of a burning feeling when she urinated. At this time, Fredrica and her children were living with Mike Golagram at 424 West 38th Street in Ashtabula, Ohio, described as "a boarding house for many unnamed men." Fredrica and the children were sleeping on couches and chairs in the living room. At the urging of Children Services, Fredrica moved herself and the children to a shelter called Homesafe.
 {¶ 3} Children Services further learned that Fredrica had mental health issues for which she had not taken her prescribed medicine for approximately three months. At Homesafe, Fredrica was observed giving Thomas his prescribed medicine at the wrong time, hitting the children, and verbally abusing the children. On April 8, 2004, Fredrica admitted that she was overwhelmed. Fredrica was admitted to the Ashtabula County Medical Center and Children Services took custody of Alice and Thomas.
 {¶ 4} Thomas was initially placed in foster care, but eventually was placed in the custody of his natural father. Alice was immediately placed in the custody of her paternal aunt, Laura Dalrymple, who currently has custody of Alice. Both Fredrica and Alice have resided with Dalrymple at various times prior to April 2004.
 {¶ 5} On April 27, 2004, Fredrica stipulated that the children were dependent. On July 7, 2004, Children Services was granted temporary custody of Alice and Dalrymple was granted legal custody. Attorney Lisa V. Nelson was appointed guardian ad litem for Alice.
 {¶ 6} A case plan was developed for Fredrica and Alice with the goal of reunification. Fredrica was required to cooperate with the investigation regarding the allegations of abuse against Golagram; undergo a mental health assessment; take her medications as prescribed; seek counseling and support for her mental retardation; attend anger management and parenting classes; manage her income so as to meet her expenses; and obtain adequate housing.
 {¶ 7} Fredrica was evaluated by Dr. Janeen Carrell, a psychiatrist for the Bair Foundation. Fredrica was diagnosed with mild mental retardation (her full scale I.Q. being 66), dependent personality disorder, compulsive personality disorder, and moderate clinical depression. Dr. Carrell testified that Fredrica's conditions did not make it impossible for Fredrica to be an effective parent for Alice. Dr. Carrell testified that effective parenting would be difficult for Fredrica, given her personality disorders, and that these difficulties were compounded by Fredrica's diminished cognitive capacity. Dr. Carrell's concerns were centered on Fredrica's ability to deal with problems and take care of herself.
 {¶ 8} Initially, Fredrica complied with the goals of her case plan. She cooperated in the investigation regarding the sexual abuse allegations, which were unsubstantiated. Fredrica completed anger management and parenting classes. Fredrica applied for governmental housing assistance and sought a representative payee for her social security disability income. Fredrica obtained counseling and a case manager from Ashtabula County Board of MRDD Service Coordination. Fredrica's case manager from Service Coordination was Shirley Howland. Howland had been involved with Fredrica and Alice since 2001, dealing with other issues. In September 2004, Howland wrote a letter commending Fredrica's progress and compliance with the case plan to Children Services.
 {¶ 9} Despite Fredrica's progress in meeting most of the goals of the case plan, Alice could not be returned to Fredrica's custody. Fredrica's case manager from Children Services, Beverly Anderson, explained that Fredrica failed to obtain suitable housing. Fredrica never obtained her own housing, but continued to move around staying with different boyfriends and/or her mother. At the time of the hearing on Children Services' motion for permanent custody, Fredrica was living with John Bordell in a one bedroom apartment. Fredrica left several incoherent messages with Children Services' in which Bordell could be heard threatening to kick Fredrica out of the apartment. In another message, Fredrica indicated that Bordell kept guns in the apartment.
 {¶ 10} Fredrica also refused to accept a payee to help her manage her money. Testimony at the permanent custody hearing demonstrated that Fredrica has had difficulty managing her money and has allowed it to be mismanaged by others. Under Fredrica's care, there were concerns about Fredrica being able to provide food for Alice. Alice's teacher at Happy Hearts, Piotrowski, reported ongoing issues about Alice having enough to eat and eating appropriate foods, as well as having clothing to wear. Piotrowski testified that Alice used to regularly come to school hungry and wear clothes that did not fit, were dirty, or had been worn for several days at a time.
 {¶ 11} Beginning in 2005, Fredrica's compliance with the case plan began to deteriorate. Fredrica refused to work with Howland as a case manager and it became increasingly difficult for Service Coordination to locate Fredrica. Fredrica became inconsistent in taking her Effexor for depression. With the encouragement of Bordell, Fredrica increased her dosage of Effexor without consulting her doctor. Fredrica's behavior became erratic. Fredrica would leave incoherent telephone messages with Howland and Children Services. Sometimes, the messages were paranoid ranting. In August 2005, Fredrica appeared at Alice's school without apparent cause, yelling and screaming about Alice's emergency authorizations.
 {¶ 12} Beginning in March 2005, Fredrica failed to exercise regular visitation with Alice. The case plan allowed Fredrica to have supervised bi-weekly visitation with Alice at the Rooms to Grow facility. Caseworker Anderson testified that there was little interaction between Fredrica and Alice during these visits. Typically, Alice would run around and play with toys while Fredrica yelled at her to calm down. Lori Baker, a case aid for Children Services, transported Alice to the visitation. Baker testified that Fredrica had difficulty remembering the visitation schedule and needed regular reminding. Baker also testified that there were times when Alice did not want to visit and that Alice becomes hyper prior to visitation. Dalrymple testified that Alice's behavior and aggression would increase prior to visitation and that Alice needed to be reassured that she was not being returned to Fredrica. Out of approximately thirty scheduled visitations at Rooms to Grow, Fredrica failed to attend ten of them. Dalrymple allowed Fredrica to call Alice at her home but testified that Fredrica only did so sporadically.
 {¶ 13} In April 2005, the trial court appointed Attorney Joanne C. Brady to serve as Alice's new guardian ad litem.
 {¶ 14} On account of Fredrica's failure to obtain suitable housing, failure to comply with the case plan, and failure to exercise regular visitation, Children Services moved to terminate Fredrica's parental rights and to obtain permanent custody of Alice on June 2, 2005. The hearing on Children Services' motion was held on September 20, 2005. Fredrica did not appear for the hearing and her attorney's motion to continue the hearing was denied. The court proceeded to hear evidence from the case workers, Anderson and Howland; Alice's teacher, Piotrowski; case aid, Baker; and Alice's paternal aunt, Dalrymple. Dr. Carrell, the psychiatrist from the Bair Foundation, was unable to attend the hearing. The parties' stipulated that her deposition would be taken and transcribed then submitted into evidence. The parties also stipulated that written closing arguments and the guardian ad litem's report and recommendation should be submitted to the court by December 1, 2005. The guardian ad litem's report recommended the granting of Children Services' motion.
 {¶ 15} The trial court rendered its decision on February 6, 2006, terminating the parental rights of Fredrica and Gerald Kangas and granting permanent custody to Ashtabula Children Services. This appeal timely follows.
 {¶ 16} On appeal, Fredrica raises the following assignments of error.
 {¶ 17} "[1.] THE TRIAL COURT VIOLATED THE DUE PROCESS RIGHTS OF APPELLANT AND ABUSED ITS DISCRETION WHEN IT REFUSED TO GRANT A CONTINUANCE DUE TO THE ILLNESS OF APPELLANT, YET GRANTED THE APPELLEE MONTHS TO PRESENT THE DEPOSITION TRANSCRIPT OF ONE OF ITS WITNESS[ES] AND DID NOT RENDER JUDGMENT UNTIL FOUR AND ONEH-ALF MONTHS AFTER THE SCHEDULED HEARING."
 {¶ 18} "[2.] APPELLANT'S RIGHT TO DUE PROCESS WAS VIOLATED WHEN THE GUARDIAN AD LITEM [sic] DID NOT FILE HER REPORT RECOMMENDING THE TERMINATION OF APPELLANT'S PARENTAL RIGHTS UNTIL SEVERAL MONTHS AFTER THE CONCLUSION OF THE PERMANENT CUSTODY HEARING.
 {¶ 19} "[3.] THE TRIAL COURT ERRED BY FAILING TO APPOINT INDEPENDENT COUNSEL FOR ALICE, AS REQUIRED BY STATUTE AND JUVENILE RULE.
 {¶ 20} "[4.] THE JUVENILE COURT ERRED IN DETERMINING THAT GRANTING PERMANENT CUSTODY TO THE APPELLEE WAS IN THE BEST INTEREST OF THE CHILD.
 {¶ 21} "[5.] THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HER ATTORNEY FAILED TO PROTECT HER RIGHTS DURING THE PERMANENT CUSTODY PROCEEDINGS.
 {¶ 22} "[6.] THE JUVENILE COURT'S FAILURE TO INDEPENDENTLY CONSIDER AND WEIGH THE EVIDENCE PRESENTED IN THE PERMANENT CUSTODY HEARING, AS DEMONSTRATED BY ITS VERBATIM ADOPTION OF THE APPELLEE'S CLOSING ARGUMENTS INTO ITS JUDGMENT ENTRY, VIOLATED APPELLANT'S DUE PROCESS RIGHT TO A MEANINGFUL AND FAIR HEARING BY AN IMPARTIAL FACTFINDER."
 {¶ 23} In the first assignment of error, Fredrica argues the trial court erred by denying her motion to continue the permanent custody hearing when she was unable to attend due to illness. Fredrica notes that Children Services was given two additional months to submit the deposition of its witness, Dr. Carrell, who was unable to attend the September hearing and that the court did not render its decision until February 2006. Therefore, Fredrica maintains the court was without justification for denying Fredrica her right to testify.
 {¶ 24} "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge."State v. Unger (1981), 67 Ohio St.2d 65, paragraph one of the syllabus; State ex rel. Buck v. McCabe (1942),140 Ohio St. 535, paragraph one of the syllabus. "[A]n appellate court will not interfere with the exercise of this discretion unless the action of the court is plainly erroneous and constitutes a clear abuse of discretion." Buck, 140 Ohio St. at 538. In many situations, a court will have acted within its discretion whether it granted or denied the continuance. "When applying the abuse of discretion standard [in these situations], a reviewing court is not free to merely substitute its judgment for that of the trial court." Fontanella v. Ambrosio, 11th Dist. No. 2001-T-0033, 2002-Ohio-3144, at ¶ 17, citing In Re: Jane Doe, I (1991),57 Ohio St.3d 135, 137.
 {¶ 25} "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Unger,67 Ohio St.2d at 67, citing Ungar v. Sarafite (1964), 376 U.S. 575, 589.
 {¶ 26} In the present case, counsel for Fredrica moved verbally for a continuance at the commencement of the September hearing. Counsel stated: "I did speak with my client, the mother of the subject child, last week and reminded her of the hearing. An earlier letter did go out also from our office reminding her of today's hearing date. I also spoke with Fredrica directly this morning at approximately 9:35 a.m., not too long ago. She indicated to me that she was weak and tired and nervous and could not be present for the proceeding this morning. I advised her of the magnitude of this hearing, the seriousness of it regarding Alice Kangas, her daughter, but she is not here, Sir, so for the record, I will move to continue the proceeding."
 {¶ 27} The trial court acted within its discretion to deny a continuance in such circumstances. Fredrica failed to establish that her absence at the hearing was unavoidable. Merely claiming to be "tired," "weak," or "nervous," without further evidence that these conditions were truly debilitating, does not justify continuing a trial scheduled months in advance. We further note that Fredrica did not inform her attorney or the court that she would not be present at the hearing until after the hearing was scheduled to begin. Although the court continued to receive evidence after the hearing, there is no indication that Fredrica attempted to further justify her absence or submit evidence on her behalf. Therefore, the denial of Fredrica's continuance was not arbitrary, unreasonable or unconscionable. Cf. In re LaigleChildren, 5th Dist. No. 2005C-A-00264, 2006-Ohio-829, at ¶ 20 (mother's unexplained absence at permanent custody hearing did not justify a continuance); In re Shanequa H. (1996),109 Ohio App.3d 142, 146-147 (denial of a motion for a continuance to allow mother to enter drug rehabilitation was not an abuse of discretion).
 {¶ 28} The first assignment of error is without merit.
 {¶ 29} Under her second assignment of error, Fredrica argues that the trial court erred by allowing the guardian ad litem to file her report after the conclusion of the permanent custody hearing without allowing Fredrica an opportunity to cross-examine the guardian ad litem regarding the contents of the report. We consider these two separate arguments and will address each separately although they are contained in a single assignment of error.
 {¶ 30} Untimely Report
 {¶ 31} "A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing" on a motion for permanent custody. R.C. 2151.414(C). The failure of the guardian ad litem to timely file a written report as required is "a dereliction of statutory duty and error." In re Breslav (Apr. 13, 2000), 8th Dist. No. 75468, 2000 Ohio App. LEXIS 1655, at *20; accord In re Ridenour, 11th Dist. Nos. 2003-L-146, 2003-L-147 and 2003-L-148, 2004-Ohio-1958, at ¶ 23. Although the failure to file a report may be afoul of the statutory requirements, it is not always reversible error for the guardian ad litem to file the report post hearing. Ridenour
at ¶ 28.
 {¶ 32} When no prejudice results from the late filing of the guardian ad litem's report, it generally is harmless error.Ridenour at ¶ 28. In instances where the parties were presented with the report at the time of hearing or where proper testimony was elicited at the hearing, no error has been found. Id. However, in this case the report was not filed until months beyond the hearing date. Therefore, our analysis must now turn to the effect of the untimely report on the substantive due process rights of Fredrica.
 {¶ 33} No Opportunity to Cross-Examine
 {¶ 34} In light of the untimely guardian ad litem report, Fredrica was precluded from cross-examining the guardian ad litem on the report and recommendations contained therein. The Ohio Supreme Court has held that, "[i]n a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation." In reHoffman, 97 Ohio St.3d 92, 2002-Ohio-5368, at syllabus. In rendering this decision, the Supreme Court observed that "[f]rom the plain language of the statute, it is reasonable to conclude that the purpose of enacting R.C. 2151.414(C) is to give the court information, in addition to that elicited at the hearing, to assist it in making sound decisions concerning permanent custody placements." Id. at ¶ 13.
 {¶ 35} This court has interpreted Hoffman to logically include a requirement that "* * * regardless of the substance of the report of the guardian ad litem, a parent should always be given the opportunity to present new evidence in regards to the report and to cross-examine the guardian ad litem as to the substance of his factual findings and recommendations." In reSalsgiver, 11th Dist. No. 2002-G-2477, 2003-Ohio-1206, at ¶ 27. Much like the facts in the present case, the appellee inSalsgiver likewise argued that appellant had failed to request an opportunity to cross-examine the guardian ad litem and therefore appellant had waived the same. We rejected this waiver argument in Salsgiver. Id. at ¶ 28-29. We reject the same argument here even though counsel for Fredrica acquiesced to the late filing of the report.
 {¶ 36} It is paramount that parents are afforded due process in all aspects prior to the termination of their parental rights.Hoffman at ¶ 15. This includes the right to cross-examine the guardian ad litem on her recommendation and report so long as the trial court relied on that recommendation and report in rendering its decision. This position is both consistent with the Ohio Supreme Court as well as consistent with other jurisdictions as noted in Hoffman. Id. at ¶ 18-23. Even where the outcome may be the same and therefore the error may be presumed to be harmless, it is imperative that the cross-examination take place and the failure to provide that opportunity is reversible error. Id. at ¶ 19 quoting Collins v. Collins (1984), 283 S.C. 526, at 530.
 {¶ 37} We do not believe that this essential due process right is one which can simply be waived away. Salsgiver, at ¶ 29. The onus is on the trial court to ensure that each and every aspect of the termination of parental rights is followed in a manner which protects the due process rights of the parent whose rights are sought to be terminated. As we stated in Salsgiver,
"* * * the trial court was required to schedule an additional hearing so that appellant could indicate whether she wanted to present new evidence in regard to the supplemental report and cross-examine the guardian ad litem on the report's contents." Id. at ¶ 29. In this setting, anytime new evidence is submitted to the trial court post hearing, it is imperitive that the court provide an opportunity for cross-examination. See, In ReWilliams, 11th Dist. Nos. 2003-G-2498 and 2003-G2-499, 2003-Ohio-3550, at ¶ 28, In Re D.D., 8th Dist. No. 83537,2004-Ohio-4243. The failure to afford Fredrica the opportunity to cross-examine the guardian ad litem on her untimely report was error. In Re Dunikowski, 5th Dist. No. 02-CA-15, 2002-Ohio-7050. Once the trial court makes the decision to allow evidence to enter the record after the hearing, the trial court should provide an opportunity for cross-examination and the presentation of rebuttal evidence. Webb v. Lane (March 15, 2000), 4th Dist. No. 99CA12, 2000 Ohio App. LEXIS 1077. "Without these safeguards, there are no measures to ensure the accuracy of the information provided and the credibility of those who made statements." Hoffman at ¶ 25. In areas involving the termination of parental rights, which has been described as analogous to the death penalty, strict procedural requirements are a necessity.
 {¶ 38} Fredrica asserts that the failure to afford her the opportunity to cross-examine the guardian ad litem is error which requires complete reversal. We do not agree. The due process violation is singular and can be cured by remanding this matter to the trial court to hold an evidentiary hearing on the guardian ad litem's report. At that hearing, Fredrica should be permitted to cross-examine the guardian ad litem and present any rebuttal witnesses or evidence to the report.
 {¶ 39} The second assignment of error is well-taken.
 {¶ 40} In the third assignment of error, Fredrica asserts the trial court erred by failing to appoint independent counsel to represent Alice.
 {¶ 41} "Pursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." In Re Williams, 101 Ohio St.3d 398,2004-Ohio-1500 at syllabus. Whether the child who is the subject of a permanent custody proceeding actually needs independent counsel is a decision which should be made on a case-by-case basis, "* * * taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." Id. at ¶ 17.
 {¶ 42} "Where there is no conflict of interest, a child's guardian ad litem may act as counsel for the child." Williams,
2003-Ohio-3550, at ¶ 20. "However, the juvenile court must expressly state that it is making a `dual appointment' for the guardian ad litem to act as the child's attorney and must also make a finding that no conflict of interest exists." Id.; accordIn re McLean, 11th Dist. No. 2005-T-0018, 2005-Ohio-2576, at ¶ 52.
 {¶ 43} Alternately, the trial court may determine that the child lacks the maturity or competency to express a meaningful opinion regarding their custody. Williams, 2003-Ohio-3550, at ¶ 21. "Before a court makes this decision, it must conduct some investigation into the child's wishes and level of maturity."Ridenour, 2004-Ohio-1958, at ¶ 50.
 {¶ 44} In the present case, the trial court failed to appoint Alice's guardian ad litem to act as her attorney and did not make any determination regarding whether Alice possessed the competency and maturity to express her own wishes. At trial, there was no direct testimony regarding Alice's wishes. Baker testified that Alice sometimes did not want visit with Fredrica. Dalrymple testified that Alice needed reassuring that she would not be returned to Fredrica's custody before visiting with her. The guardian ad litem reported that Alice "enjoys being with her Aunt Laura [Dalrymple] and wishes to remain in her home," although "Alice does miss her mother and would like to visit with her mother at some point in the future." Regarding Alice's maturity and competency, Piotrowski testified that Alice cannot read or write and functions, academically, at the level of a three-and-a-half year old. Piotrowski also testified that Alice is articulate and is able to vocalize things she has done and things that have happened to her. Piotrowski testified that Alice understands cause and effect. Dalrymple testified that Alice understands that she is not her biological mother, but that she is her "mommy" because Dalrymple takes care of her.
 {¶ 45} From this evidence, it appears that Alice is capable of expressing an opinion regarding her custody and that this opinion is consistent with the guardian ad litem's recommendation that Fredrica's parental rights be terminated. However, it was necessary for the trial court to make this determination prior to the permanent custody proceedings by expressly appointing Alice's guardian ad litem as counsel. Williams, 2003-Ohio-3550, at ¶ 20; see, also, In re Baby Girl Baxter (1985),17 Ohio St.3d 229, 232 (distinguishing the role of an attorney as counsel and as guardian ad litem). The denial of Alice's right to counsel cannot be rectified by this court's ex post facto determination that the guardian ad litem could have served as counsel for Alice. Cf. In re T.V., 10th Dist. Nos. 04AP-1159 and 04AP-1160,2005-Ohio-4280, at ¶ 69 ("[f]ollowing In re Williams, juvenile courts and guardians ad litem would be well advised to more specifically ascertain and address the wishes of the children so as to guard against denial of the children's right to counsel").
 {¶ 46} Despite this court's precedent that the trial court must expressly state its intention to appoint the guardian ad litem to serve as counsel for the child, the trial court's failure to do so in the present case does not require reversal. In contrast to prior decisions where this court has reversed for failing to make an express, dual appointment, Alice's wishes regarding her custody were evidenced by the guardian ad litem's report and witness testimony. Cf. Ridenour, 2004-Ohio-1958, at ¶ 52 (no evidence regarding the wishes and/or level of maturity of two of the subject children). Moreover, Alice's wishes were consistent with the guardian's recommendation. Cf. In reWilliams, 11th Dist. Nos. 2002-G-2454 and 2002-G-2459, 2002-Ohio-6588, at ¶ 27 (child's express wishes conflicted with the guardian ad litem's recommendation). It would be nonsensical to reverse a custody determination on the grounds that the child/subject of the proceeding was not represented by counsel when the ultimate determination is in conformity with the child's preference.
 {¶ 47} The third assignment of error is without merit.
 {¶ 48} We will next consider Fredrica's fifth assignment of error, since it is directly related to the issues raised in the second and third assignments of error. Under the fifth assignment, Fredrica argues that she received ineffective assistance of trial counsel when her attorney failed to request that the court appoint an attorney to represent Alice and when her attorney failed to object to the untimely filing of the guardian ad litem's report.
 {¶ 49} Where the state institutes proceedings to force the permanent, involuntary termination of a parent's right in respect to their children, the parent is guaranteed effective assistance of counsel by the due process clauses of the United States and Ohio Constitutions. State ex rel. Heller v. Miller (1980),61 Ohio St.2d 6, paragraph two of the syllabus; In re Brewster
(Mar. 25, 1994), 11th Dist. No. 91-P-2365, 1994 Ohio App. LEXIS 1317, at *3, citing Jones v. Lucas Cty. Children Services Bd.
(1988), 46 Ohio App.3d 85, 86. When evaluating claims of ineffective assistance of counsel in proceedings to terminate parental rights, courts apply the two-part test of Strickland v.Washington (1984), 466 U.S. 668, applicable in criminal proceedings. In re Ridenour, 11th Dist. Nos. 2004-L-168, 2004-L-169 and 2004-L-170, 2005-Ohio-349, at ¶ 9.
 {¶ 50} To demonstrate ineffective assistance of counsel, Fredrica "must show that counsel's performance was deficient and that * * * the deficient performance was so serious as to deprive [her] * * * of a fair trial, a trial whose result is reliable."In re Colbert (Nov. 9, 2000), 11th Dist. No. 2000-A-0028, 2000 Ohio App. LEXIS 5249, at *7, citing State v. Post (1987),32 Ohio St.3d 380, 388; cf. Brewster at *3 (the Strickland test "requires a showing that counsel's performance was so deficient that the constitutional guarantee was not satisfied, and that the deficient performance prejudiced the defense.") There is wide latitude given to legal counsel that decisions made at the trial court level may have been tactical discretions and should be afforded a presumption of competency. Strickland,466 U.S. at 689; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301 (a properly licensed attorney is presumed competent); State v.Dixon, 101 Ohio St.3d 328, 2004-Ohio-1585, at ¶ 52 (great deference must be shown to counsel's in matters of trial strategy).
 {¶ 51} As to Fredrica's claim that counsel was ineffective for failing to request the appointment of independent counsel for Alice, this failure was not prejudicial to Fredrica's interest. In general, the right to counsel of a child who is the subject of a permanent custody proceeding cannot be waived by the failure of parent's counsel to assert it. Williams, 2002-Ohio-6588, at ¶ 23. In the present case, Alice did not wish to be returned to Fredrica's custody as was evidenced by other testimony at trial. Rather than prejudice Fredrica's interest, the failure to appoint independent counsel was favorable to her interests in as much as Alice's counsel would have had to advocate strongly for the termination of her parental rights.
 {¶ 52} As to Fredrica's claim that counsel was ineffective for stipulating that the closing arguments as well as the guardian ad litem's report could be submitted after the hearing, we disagree. There are situations where it is more favorable for closing arguments to be submitted in writing as opposed to the verbal tradition. This is a tactical decision to be determined by legal counsel. A decision to submit these arguments in writing is not deficient and therefore fails the first prong of theStrickland test.
 {¶ 53} In regards to the stipulation for the guardian ad litem to file her report post hearing, we acknowledge that although this is not the proper procedure according to the statute, there are situations where the guardian ad litem may request to file or may simply defy the statutory requirement and file the report after the hearing on the evidence. It was not the stipulation to the late filing which prejudiced Frederica, it was the failure of the trial court to provide an opportunity for cross-examination after the report was submitted as we explained in our analysis of Frederica's second assignment of error.
 {¶ 54} The fifth assignment of error is without merit.
 {¶ 55} Under the fourth assignment of error, Fredrica raises two arguments concerning the trial court's determination that granting Children Services' permanent custody motion was in Alice's best interest.
 {¶ 56} Fredrica's second argument under this assignment of error alleges the trial court's best interest determination is against the manifest weight of the evidence. In light of our decision to remand this matter to the trial court to conduct a hearing wherein Fredrica will be afforded an opportunity to cross-examine the guardian ad litem and present rebuttal evidence, we believe it is premature to address this argument as the same is moot in light of the remand. It is premature to address an argument regarding the weight of the evidence when additional evidence may be presented to the trial court on remand.
 {¶ 57} The fourth assignment of error is moot.
 {¶ 58} Under the sixth assignment of error, Fredrica argues that the trial court failed to give any meaningful consideration to the evidence before it in rendering its decision to terminate her parental rights. We disagree.
 {¶ 59} The trial court's February 6, 2006 five-page judgment entry is a virtual verbatim copy of Children Services written closing argument. It is not error, however, for a court to adopt the written findings of a party, provided that those findings are consistent with the evidence presented. It is the ultimate responsibility of this court to review the lower court's judgment, not its reasoning. See, State v. Eschenauer, 11th Dist. No. 12-237, 1988 Ohio App. LEXIS 4479, at *8 (citation omitted). In the present case, we find the trial court's judgment terminating Fredrica's parental rights to be correct and supported by the evidence presented thus far. Although we are remanding this matter for a proceeding where additional evidence may be presented, it is appropriate to rule on this assignment of error as it essentially alleges pure error as a result of the adoption of the Children Service's closing argument into the judgment entry of the trial court. The fact that the court borrowed its analysis from one of the parties does not necessarily invalidate that judgment.
 {¶ 60} Fredrica points out that the court erroneously found that Fredrica attended one-third of the possible visitations with Alice when, in fact, the evidence showed she attended two-thirds of the possible visitations. The court then concluded therefore that Fredrica had "abandoned" Alice. The error in the judgment entry is not evidence that the court was acting as an impartial fact finder when there was additional evidence on the record to support the decision. For example, the court's judgment is supported by other evidence in the record, such as the fact that Fredrica failed to exercise visitation with Alice after March 2005, that Fredrica failed to take advantage of the opportunity to contact Alice at Dalrymple's house, and that Fredrica failed to remedy the conditions, such as the lack of suitable housing, which prevented Alice from being returned to her.
 {¶ 61} The sixth assignment of error is without merit.
 {¶ 62} For the foregoing reasons, the judgment entry of the Ashtabula County Court of Common Pleas, Juvenile Division, terminating the parental rights of Fredrica Snyder and granting permanent custody of Alice Kangas to Ashtabula County Children Services Board is reversed and remanded.
O'Neill, J., concurs in judgment only with Concurring Opinion, Grendell, J., dissents with Dissenting Opinion.