OPINION
{¶ 1} Appellant, A.M., appeals a decision of the Harrison County Common Pleas Court, Juvenile Division, terminating her parental rights over her son, J.M., and granting permanent custody of him to appellee, Harrison County Department of Job and Family Services (DJFS). She argues that the trial court's finding that she had abandoned her son and that DJFS had expended reasonable efforts towards reunification were against the manifest weight of the evidence and an abuse of discretion. She also argues that the trial court's reliance on the guardian ad litem's report in reaching its decision violated her Fourteenth Amendment procedural due process rights.
 {¶ 2} On September 11, 2006, fifteen-year-old A.M. gave birth to J.M. (Tr. 29.) Since A.M. tested positive for drugs when she was admitted to the hospital to give birth to J.M., a referral was made to DJFS. (Tr. 28, 252.) In November 2006, A.M., along with her mother, agreed to voluntary services from DJFS. A case plan was developed for A.M.'s mother, A.M. and J.M., with the goal of reunification. A.M.'s case plan goals included: a mental health assessment and counseling, if needed; drug and alcohol assessment and counseling; Help Me Grow services; and parent education. (Tr. 31, 86-87.)
 {¶ 3} On December 21, 2006, A.M.'s mother agreed to relinquish custody of A.M. and J.M. to DJFS through a voluntary thirty-day agreement with the previously initiated voluntary services and case plan to continue. (Tr. 29.) A.M. and J.M. were placed in foster care together. (Tr. 40.) On January 17, 2007, DJFS filed complaints of dependency with respect to A.M. and J.M. and both remained in the temporary custody of DJFS until February 26, 2007, when they were both returned to A.M.'s mother with DJFS retaining court-ordered protective supervision.
 {¶ 4} Due to a previous unruly determination, A.M. was on probation. (Tr. 275.) On May 8, 2007, a day when A.M. was supposed to be in school, A.M.'s mother called A.M.'s probation officer, Laurie McAfee, and reported that A.M. had left the home without permission, taking J.M. with her. (Tr. 276.) Officer McAfee, along with the assistance of Sergeant Mark Smith of the Cadiz Police Department, went to A.M.'s home in search of her. (Tr 65.) A.M.'s mother indicated that A.M. was seen *Page 2 
walking in town. (Tr. 66.) Sgt. Smith and Officer McAfee located A.M. in town walking with a friend and pushing J.M. in a stroller. (Tr. 66, 277, 279.) McAfee questioned A.M. about why she was not in school and inquired about what was going on. (Tr. 66.) A.M. indicated that she was having problems with her mother and that she needed help. (Tr. 66) Sgt. Smith contacted Children Services and they sent Demetrius Carrothers. (Tr. 66, 280.) A.M.'s aunt arrived at the scene and she let her hold J.M. (Tr. 70, 235, 281) When it became apparent to A.M. that she and J.M. were going to be placed in the care of Children Services, she fled the area. (Tr. 67, 70-71, 236, 281.) J.M. was placed in foster care. (Tr. 40-41.)
 {¶ 5} Unable to locate A.M., Sgt. Smith had her entered into LEADS as a missing/runaway juvenile. (Tr. 69.) A.M. went to an ex-boyfriend's house in the Akron area and then later moved to Barberton. (Tr. 237-238, 263.) While there, A.M. made phone calls to her grandmother. Once the grandmother determined that A.M. was in Barberton, she notified their police department and DJFS. (Tr. 190, 203.) Barberton Police Department recovered A.M. on August 27, 2007, and Officer McAfee and a Cadiz Police Department officer went to Barberton and returned A.M. to Harrison County. (Tr. 67.) A.M. was then returned to her mother's custody. (Tr. 39.) J.M. remained in foster care.
 {¶ 6} On November 30, 2007, A.M.'s mother kicked her out of her home at which point she went to live with her grandmother. (Tr. 88.) A.M. attributed the incident to a fight she got into with her mother's boyfriend and his giving her mother an ultimatum that either he or her kids had to go. (Tr. 243-244.) A.M.'s grandmother would later obtain legal custody of her in March 2008.
 {¶ 7} Due to A.M.'s lack of progress on the case plan, on April 9, 2008, DJFS moved for permanent custody of J.M. based on the ninety-day period of abandonment that resulted from A.M.'s running away and that it would be in J.M.'s best interests for DJFS to have permanent custody. A.M. opposed the motion alleging that she had made enough progress on the case plan to warrant a six-month extension. *Page 3 
 {¶ 8} The matter proceeded to a hearing on May 6, 2008, and May 20, 2008. At the May 6th hearing, before proceeding on DJFS's motion for permanent custody, the trial court denied A.M.'s grandmother's motion to terminate temporary custody and for legal custody of J.M. The court limited her role to that of A.M.'s legal guardian and custodian only. On May 6, 2008, DJFS presented the testimony of eight witnesses: (1) Courtney Walker, A.M.'s first DJFS case worker; (2) Sergeant Mark Smith, Cadiz Police Department; (3) Valerie Warrington; (4) Linda Shoppe, A.M.'s second DJFS case worker; (5) Mark Kowalski, Harrison Central High School Assistant Principal; (6) Robert Brooks, Harrison Central High School Resource Officer; (7) Monica Goddard, A.M.'s drug and alcohol counselor; and (8) Cindy Sickles, A.M.'s mental health counselor. On May 20, 2008, A.M. testified on her own behalf and presented the testimony of her grandmother.
 {¶ 9} On May 28, 2008, the juvenile court granted permanent custody of J.M. to DJFS. The court determined that A.M. had abandoned J.M., that attempts to reunify them had failed, and that it was in J.M.'s best interests that DJFS be granted permanent custody. This appeal followed.
 {¶ 10} A.M. raises three assignments of error. A.M.'s third assignment of error will be addressed first since it is dispositive of this appeal. It states:
 {¶ 11} "THE TRIAL COURT'S RELIANCE UPON THE REPORT OF THE GUARDIAN AD LITEM OF THE CHILD WITHOUT PROVIDING APPELLANT AN OPPORTUNITY TO CROSS-EXAMINE THE GUARDIAN AD LITEM CONSTITUTED AN ABUSE OF DISCRETION AND VIOLATED APPELLANT'S FOURTEENTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS."
 {¶ 12} The guardian ad litem (GAL) of the subject child is required to submit a written report to the court prior to or at the time of the hearing. R.C. 2151.414(C). In this case, at the May 6, 2008 hearing, J.M.'s GAL submitted his report to the court. Without being sworn in, he orally summarized his findings and recommendation that it would be in J.M.'s best interest to be permanently placed with DJFS. (Tr. 20-22.) The trial court did not allow any examination of the GAL and specifically stated that there would be no cross-examination of the GAL. (Tr. 22.) *Page 4 
 {¶ 13} A.M. states that it is unclear upon which parts of the GAL's report the trial court relied in terminating her parental rights toward her son. Since she was not allowed to cross-examine the GAL, she concludes that her due process rights were violated. In response, DFJS argues that A.M. waived any issue regarding the GAL because she failed to object at the hearing.
 {¶ 14} "It is well recognized that the right to raise a child is an `essential' and `basic' civil right. In re Murray (1990),52 Ohio St.3d 155, 157, 556 N.E.2d 1169, 1171, quoting Stanley v. Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558. Furthermore, a parent's right to the custody of his or her child has been deemed `paramount.' In re Perales (1977), 52 Ohio St.2d 89, 97, 6 O.O.3d 293,297, 369 N.E.2d 1047, 1051-1052. Permanent termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case.' In re Smith (1991), 77 Ohio App.3d 1, 16,601 N.E.2d 45, 54. Therefore, parents `must be afforded every procedural and substantive protection the law allows.' Id." In re Hayes (1997),79 Ohio St.3d 46, 48, 679 N.E.2d 680.
 {¶ 15} Regarding GAL reports, the Ohio Supreme Court has held that "In a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation." In re Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368,776 N.E.2d 485, syllabus. "Even where the outcome may be the same and therefore the error may be presumed to be harmless, it is imperative that the cross-examination take place and the failure to provide that opportunity is reversible error." In re Kangas, 11th Dist. No. 2006-A-0010, 2006-Ohio-3433, at ¶ 36, citing Hoffman at ¶ 19.
 {¶ 16} DJFS attempts to skirt Hoffman's holding by arguing that A.M. waived the issue and that the record does not reveal that the trial court relied on the GAL's report. There are a line of cases distinguishing Hoffman on the basis that the parent waived the issue and/or it was apparent that the court had not based its decision on the GAL's report. See, e.g., In re A.L.D., 10th Dist. No. 08AP-238,2008-Ohio-3626 (mother never attempted or requested to cross-examine GAL); Bates-Brown v. *Page 5 Brown, 11th Dist. No. 2006-T-0089, 2007-Ohio-5203; (no denial of due process where GAL filed report one month after hearing and there was no indication that the trial court's decision was based upon the GAL report); In re A.D., 8th Dist. No. 85648, 2005-Ohio-5441 (father failed to request to cross-examine GAL or object to the trial court's use of the GAL report).
 {¶ 17} Here, it cannot be said that A.M. waived the issue or that the record is apparent that the trial court did not rely on the GAL's report. In those cases dealing with waiver, the key seems to be whether the parent had an opportunity to cross-examine the GAL. For example, inIn re Kangas, 11th Dist. No. 2006-A-0010, 2006-Ohio-3433, the Eleventh District found that an untimely GAL report (i.e., filed following the hearing) precluded the parent from an opportunity to cross-examine the GAL and, thus, violated the parent's due process rights in accordance with Hoffman. In this case, A.M. was likewise precluded from cross-examining the GAL. Just prior to DJFS calling its first witness, the trial court had the GAL give an oral summary of his findings and recommendation. When he finished, the court stated:
 {¶ 18} "THE COURT: Thank you very much, sir. You are excused.
 {¶ 19} "Just so all the parties know that Guardian Ad Litem's, there is not any cross examination permitted. It is purely the reading of their report. So with that, Mr. Tabacchi, the Court thanks you and you are excused." (Tr. 22.)
 {¶ 20} Under the facts and circumstances of this case, this clear pronouncement by the court immediately following the GAL's statement precluded any meaningful or effective opportunity by A.M. to even attempt to cross-examine the GAL. It is evident that the court had no intention of allowing any of the parties to question the GAL. In essence, the court peremptorily overruled any anticipated objections concerning inquiry of the GAL. An objection following the court's ruling on the matter might have been ideal, but at that time and place might have seemed fruitless and maybe even seen as risking an admonishment or contempt of court.
 {¶ 21} Lastly, Hoffman cannot be distinguished on the basis that the trial court did not rely on the GAL's report. The court discusses the report at page two of its decision. And, at page nine of the entry, in determining J.M.'s best interest, the court *Page 6 
made a specific finding that the GAL had recommended permanency. Therefore, the court did rely, at least in part, on the GAL's report, and denying A.M. the opportunity to cross-examine was violative of her due process rights.
 {¶ 22} Accordingly, A.M.'s third assignment of error has merit.
 {¶ 23} A.M.'s first and second of assignments of error states:
 {¶ 24} "THE TRIAL COURT'S FINDING THAT APPELLANT HAD ABANDONED HER CHILD WITHOUT CONSIDERING EVIDENCE THAT REBUTTED THE STATUTORY PRESUMPTION OF ABANDONMENT CONSTITUTED AN ABUSE OF DISCRETION AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 25} "THE TRIAL COURT'S FINDING THAT THE DEPARTMENT OF JOB AND FAMILY SERVICES HAD USED REASONABLE EFFORTS TO REUNIFY APPELLANT WITH HER CHILD AND ITS DENIAL OF A SIX MONTH EXTENSION TO ALLOW APPELLANT TO COMPLETE HER CASE PLAN WERE IMPROPER, WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONSTITUTED AN ABUSE OF DISCRETION."
 {¶ 26} These assignments or error are rendered moot by our disposition of A.M.'s third assignment of error. App. R. 12(A)(1)(c).
 {¶ 27} Based on our resolution of A.M.'s third assignment of error, the judgment of the trial court is hereby reversed and remanded for the court to hold an evidentiary hearing on the guardian ad litem's report. At that hearing, A.M. should be permitted to cross-examine the guardian ad litem and present any rebuttal witnesses or evidence to the report.
 Vukovich, J., concurs. Waite, J., concurs. *Page 1