[Cite as *In re K.M.*, 2017-Ohio-8286.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| K.M., DEPENDENT CHILD | : | |
| | | **CASE NO. 2017-T-0059** |

Appeal from the Trumbull County Court of Common Pleas, Juvenile Division, Case No. 2015 CH 00060.

Judgment: Affirmed.

*Judith M. Kowalski*, 333 Babbitt Road, Suite #323, Euclid, OH  44123 (For Appellant).

*Susan Porter Collins*, Trumbull County Children Services Board, 2282 Reeves Road, N.E., Warren, OH  44483 (For Appellee).

*Sherman Miles*, P.O. Box 606, Campbell, OH  44406 (Guardian ad litem).

THOMAS R. WRIGHT, J.

{¶1}   Appellant, Catherine Houston, appeals the juvenile court's judgment terminating her parental rights to her biological son, K.M.  She challenges the manifest weight of the evidence; contests the denial of her motion to continue the final hearing; and argues the motion for permanent custody was premature.  We affirm.

{¶2}   K.M. was born July 19, 2006.  At some point during early childhood, his

biological father died in an automobile accident. Until September 2013, K.M. lived with appellant and other relatives in Pennsylvania. Before September 2013, appellant developed a drug habit and was convicted of multiple criminal offenses, including prostitution and burglary. She was ultimately sentenced to prison.

{¶3} Appellant, therefore, arranged for her friend, Tammie Hobart to take custody of K.M. and raise him at her Trumbull County, Ohio home. This arrangement was approved by a Pennsylvania state court.

{¶4} K.M. lived with Hobart until November 2015 when she voluntarily relinquished custody to appellee, the Trumbull County Children's Services Board, because she could no longer control him. K.M. was prone to angry outbursts and was physically threatening to others. One month later, the trial court deemed K.M. to be a dependent child and placed him in appellee's temporary custody.

{¶5} K.M. was diagnosed with disruptive mood dysregulation and placed into a secured care unit where he received daily counseling for over ten months. It was soon discovered that both appellant and Hobart were anger triggers, since he could not understand why neither wanted to care for him. At the beginning of treatment, K.M. could not function in a family setting and was having difficulty in school. However, as his treatment progressed, his outbursts decreased and, ultimately, he began visiting a foster family on weekends.

{¶6} During this time frame, appellant was moved from state prison to a half-way house near Pittsburgh. The half-way house provided appellee with programs to help reunite her with K.M. once her prison term was concluded. To this end, appellee's caseworker developed a three-point plan requiring appellant to: (1) complete a drug

2

treatment program; (2) take parenting classes; and (3) establish regular communication with K.M.

{¶7} During the first six months of 2016, appellant made some progress on all three objectives. She interacted with K.M. over the phone and visually via the internet. In July 2016, they met and had a supervised visit on K.M.'s tenth birthday. Although appellant gave K.M. multiple gifts, she did not spend much time with him. Instead, she talked mostly with a friend who attended the party, while K.M. played with another child. K.M.'s counselor concluded, therefore, that appellant's relationship with K.M. remained shallow.

{¶8} Approximately ten days after the birthday visit, appellant escaped from the half-way house and remained a fugitive from the authorities for over two months. Twice during this period, she telephoned K.M. at the secured care unit, but was precluded from speaking with him until she talked with the caseworker. New charges of prostitution and providing false identification to a police officer were brought against her when she was apprehended in October 2016. Moreover, after returning to the Pennsylvania correctional system, she admitted she had again taken illegal drugs.

{¶9} When K.M. was informed of appellant's actions, he initially thought his caseworker and counselor were misleading him as to her whereabouts, leading to outbursts. When told that appellant had been apprehended, K.M. informed his counselor that although he still wanted to see his mother periodically, he no longer wished to be reunited as a family because he did not want to be disappointed again. K.M. later repeated these sentiments to a court magistrate during an in-camera interview.

3

{¶10} While appellant was a fugitive, appellee moved the trial court for permanent custody of K.M., asserting that appellant showed a lack of commitment by escaping.

{¶11} The evidentiary hearing on the permanent custody motion was initially set before a court magistrate on November 1, 2016. Five days before hearing, appellant faxed a letter to the trial court requesting a continuance. The magistrate granted her motion, rescheduled the hearing for December 7, 2016, and appointed an attorney to represent her. Appellant was given a court telephone number to call on the rescheduled date to participate.

{¶12} The trial court never received a telephone call from appellant on the date of the hearing. After waiting approximately thirty-five minutes for her call, the magistrate began the hearing. Appellant's counsel immediately moved to continue the hearing, but provided no explanation for appellant's failure to call. Upon considering arguments from appellee and the guardian ad litem as to the need for permanency and stability in K.M's life, the magistrate denied the continuance and went forward with the hearing.

{¶13} Appellee presented the testimony of the caseworker who formulated appellant's case plan, the residential coordinator of the secured care unit, and K.M.'s counselor. Appellant's counsel introduced two letters from correctional employees who had worked with appellant at the half-way house and at the facility where she was taken following her re-apprehension. Counsel also stated that if appellant had called in as planned, she would have asked appellant questions about the two letters.

{¶14} In recommending that the motion for permanent custody be granted, the magistrate first concluded that K.M. should not be placed with appellant. The

4

magistrate found that by escaping from the half-way house, appellant failed to follow through and satisfy her case plan objectives. Second, the magistrate held that the termination of appellant's parental rights is in K.M.'s best interests, citing the quality of his relationship with his foster family, his wish to be adopted, and his need for immediate permanent placement.

{¶15} Following the issuance of the magistrate's decision, appellant faxed a letter to the trial court, stating that she wanted to "appeal" the decision and that she had been unable to contact her trial counsel. The trial court appointed new counsel to represent her, who objected to the magistrate's failure to continue the hearing based on appellant's inability to call in and participate.

{¶16} Without specifically addressing appellant's continuance argument, the trial court overruled the objections and adopted the magistrate's factual findings and legal conclusions. The court terminated appellant's parental rights and granted permanent custody to appellee.

{¶17} Appellant asserts three assignments of error for review:

{¶18} "[1.] The juvenile court erred to the prejudice of the appellant by overruling her objections to the magistrate's decision denying her motion for continuance, and going forward with the trial even though she was not able to participate, thus depriving her of her right to due process.

{¶19} "[2.] The Trumbull County Children's Services Board failed to meet the requirements of Ohio Revised Code Section 2151.414(B)(1)(d), in that the request for permanent custody was untimely, and the trial court erred to the prejudice of the mother by granting permanent custody, as the statutory time requirements were not met.

5

{¶20} "[3.] The decision to award permanent custody was against the manifest weight of the evidence."

{¶21} Under her first assignment, appellant maintains that the magistrate abused his discretion in denying her a second continuance when she failed to call the court to participate in the hearing. She argues that given the serious nature of the hearing, the magistrate was obligated to contact the facility where she was being held and determine why she did not call.

{¶22} Upon recognizing that the termination of parental rights is the family law equivalent to the death penalty, "[t]his court has stated that a parent is entitled to 'fundamentally fair procedures in accordance with the due process provisions under the Fourth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution.' *In re Sheffey*, 167 Ohio App.3d 141, 2006-Ohio-619, at ¶21." *In re M.J.*, 11th Dist. Ashtabula No. 2011-A-0007, 2011-Ohio-2714, ¶26.

{¶23} A civil litigant does not have an absolute right to be present during trial. *In re N.T.*, 11th Dist. Ashtabula No. 2010-A-0053, 2011-Ohio-650, ¶83. Whether an incarcerated parent is permitted to attend the permanent custody hearing lies within the trial court's sound discretion. *Id.* at ¶84.

{¶24} Appellant does not contend that she was entitled to physically attend the hearing. Instead, the issue is whether a continuance should have been granted to afford appellant another opportunity to participate by phone.

{¶25} "Juv.R. 23 states that: '[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties.' An appellate court will not reverse a trial court's decision denying a motion for continuance unless the trial court abuses its

6

discretion. *In re Kangas*, 11th Dist. No. 2006-A-0010, 2006-Ohio-3433, at ¶24. * * *.

{¶26} "In considering whether a trial court abused its discretion in denying a motion for continuance, a reviewing court considers the length of the requested delay, prior continuances requested and received, the presence or absence of legitimate reasons for the requested delay, appellant's participation or contribution to the circumstances giving rise to the request for a continuance, and any other relevant factors. *State v. Unger* (1981), 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078. While these factors provide basic guidance, we are mindful that '"[t]here are no mechanical tests for deciding when the denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial court at the time the request is denied.'" *Unger*, supra, at 67, 423 N.E.2d 1078, quoting *Ungar v. Sarafite*, (1964), 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921." *In re B.D.*, 11th Dist. Lake No. 2009-L-003, 2009-Ohio-2299, ¶48-49.

{¶27} Appellant asserts the magistrate should have taken steps, such as telephoning the Pennsylvania facility, to determine why she did not call at the beginning of the hearing. However, appellant's trial counsel requested a continuance, and it was counsel's responsibility to state adequate reasons for the relief. Trial counsel did not provide any reason for appellant's failure to call. Appellant provided a reason in her objections to the magistrate's decision, but she does not raise that reason as a basis for reversal. The court was not obligated to contact the jail to determine why appellant failed to call.

{¶28} In requesting a new trial, appellant's counsel suggested that the hearing

7

be continued until after January 21, 2017, approximately forty-five days later. Accordingly to counsel, that was the date that appellant thought she might be released from the Pennsylvania facility. However, given that appellee challenged whether her release from prison was imminent and the motion for permanent custody had already been pending for more than eighty days, the requested delay was lengthy.

{¶29} In addition, at the close of evidence, appellant's counsel stated that if appellant had participated, she had intended to ask appellant questions about the two letters from the Pennsylvania correctional employees. Those letters were accepted into evidence; thus, appellant's proposed testimony would have been supplemental. More importantly, counsel did not proffer the substance of appellant's proposed testimony. To this extent, she has failed to demonstrate prejudice.

{¶30} As appellant has failed to demonstrate an abuse of discretion or prejudice, her first assignment lacks merit.

{¶31} Under her next assignment, appellant argues the magistrate and trial court erred in holding that appellee's evidence was sufficient to satisfy the requirement set forth in R.C. 2151.414(B)(1)(d). She maintains this requirement could not be relied upon because there is no dispute that appellee did not have custody of K.M. for 12 or more months of a consecutive 22-month period. Building upon this, she also maintains that appellee's motion for permanent custody was premature because appellee had temporary custody of K.M. for only 9 months before seeking permanent custody.

{¶32} As will be discussed under the third assignment, before a public services agency can take permanent custody of a minor child, it must establish, among other things, that one of five circumstances exist. R.C. 2151.414(B)(1). Appellant asserts

8

that termination of her parental rights was predicated upon a finding that K.M. was in the temporary custody of one or more public children services agencies or private child placement for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d). However, she has misread the magistrate's and the trial court's decisions. In his decision, the magistrate found under R.C. 2151.414(B)(1)(a) that "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." It did not find that appellee had custody of K.M. for 12 or more months of a consecutive 22-month period.

{¶33} R.C. 2151.414(B)(1)(a) does not have any time qualification. As a result, appellee was not required to have temporary custody of K.M. for a particular period of time prior to moving for permanent custody.

{¶34} As part of its separate "best interest" analysis, the magistrate found that as of the date of the evidentiary hearing, appellee had temporary custody of K.M. for nearly 12 months. The magistrate also found that appellant had not provided any care for K.M. for more than 22 months. Appellant has not challenged this finding as it pertains to "best interest" analysis. Given that the child's custodial history can be considered in deciding the child's best interest, we find no error in the magistrate's consideration of this factor. R.C. 2151.414(D)(1)(c). Thus, appellant's second assignment is without merit.

{¶35} Under her final assignment, appellant claims the magistrate's and trial court's finding that K.M. cannot be placed with appellant within a reasonable time is against the manifest weight of the evidence. Specifically, she contests the finding that she failed to satisfy her case plan requirements.

9

{¶36} "R.C. 2151.414 sets forth a two-part test governing whether to award permanent custody to a public services agency. *In re J.S.*, 8th Dist. Cuyahoga Nos. 101991 and 101992, 2015-Ohio-2701, ¶47. First, after a hearing, the court must find by clear and convincing evidence that granting permanent custody of the child to the agency is in the best interest of the child upon considering all relevant factors including those in R.C. 2151.414(D). Clear and convincing evidence is evidence sufficient to 'produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.' *In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985). The clear and convincing standard does not require clear and unequivocal evidence. *In re Estate of Haynes*, 25 Ohio St.3d. 101, 104, 495 N.E.2d 23 (1986). In determining whether a trial court based its decision upon clear and convincing evidence, a reviewing court must examine the record and determine whether the trier of fact had sufficient evidence before it to satisfy this burden of proof. *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). The credibility of witnesses and weight of the evidence are primarily issues for the trial court, as the trier of fact. *In re Ohler*, 4th Dist. Hocking No. 04CA8, 2005-Ohio-1583, ¶15.

{¶37} "Second, a court must make one of the findings delineated in R.C. 2151.414(B)(1)(a)-(e). *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶10. In practice, however, courts usually make the second finding first before embarking on the best interest analysis. *In re N.T.,* 11th Dist. Ashtabula No. 2010-A-0053, 2011-Ohio-650, ¶57." *In re D.S.*, 11th Dist. Trumbull No. 2015-T-0062, 2015-Ohio-4548, ¶71-72.

{¶38} Appellant does not contest the trial court's "best interest" conclusion.

Instead, her challenge is limited to whether the trial court's conclusion that K.M. cannot be placed with appellant within a reasonable time or should not be placed with her is supported.

{¶39} "In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of [16 factors] exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent * * *." R.C. 2151.414(E).

{¶40} The magistrate found R.C. 2151.414(E)(1) satisfied, which states:

{¶41} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home."

{¶42} Appellant contends that the evidence showed that she was making progress in remedying the problems that led her to relinquish custody in 2013. According to her, the evidence demonstrates that she was complying with all three requirements of her case plan: (1) receiving treatment for her drug addiction; (2) taking parenting classes; and (3) communicating with K.M.

{¶43} During the first six months of her case plan, appellant was making progress. However, when she escaped from the half-way house in July 2016, that all came to an end. She started taking illegal drugs again. She was charged with new

criminal offenses subjecting her to additional prison time. And, her communication with K.M. ended. These points support the finding that appellant was unfortunately right back where she started.

{¶44} Appellant separately argues that K.M.'s reaction when he was informed of her escape establishes that their close bond remains. While it is true that K.M. was initially scared for his mother's life and tried to take steps to contact her, appellant ignores the uncontested evidence that after she was apprehended, K.M. told both his counselor and the magistrate that he no longer wishes to be reunited with her.

{¶45} Last, appellant maintains that the testimony of K.M.'s counselor must be disregarded because he said that he "loved" K.M. This, however, does not provide a basis to disregard his testimony.

{¶46} The evidence supports the findings that K.M. could not be placed with appellant within a reasonable time and that the termination of appellant's parental rights is in K.M.'s best interest. Thus, the judgment is not against the manifest weight of the evidence, and appellant's third assignment lacks merit.

{¶47} The judgment of the Trumbull County Court of Common Pleas, Juvenile Division, is affirmed.


DIANE V. GRENDELL, J.,

TIMOTHY P. CANNON, J.,

concur.

12